# Frank v. Thompson.

### Action on a Promissory Note.

105  211
118  581
105  211
o131  443
105  211
q136  567

1. *Payment of administrator's individual debt with personal assets of his intestate's estate; when binding upon the creditor.*—An agreement by which personal assets of an intestate's estate are turned over by the administrator to the latter's own creditor, in payment of his individual debt, if fully executed by the creditor receiving such assets in payment of the administrator's indebtedness to him, is binding both upon the administrator and his creditor; and the said creditor can not be heard to say that his debt has not been paid.

2. *Evidence; right of a party to a suit to testify as to conversation with deceased person, whose estate is interested in result of the suit.*—Where in an action against the maker of a note the defense is that the note had been paid by the defendant, who was the administrator of the estate of the surety on the note sued on, turning over to the plaintiff personal assets of his intestate's estate, and a witness for the defendant testified to a conversation between the deceased and plaintiff, which tended to show that the business, out of which the assets turned over to the plaintiff arose, belonged to the decedent, the plaintiff can testify as to whether he had such a conversation, as stated by the witness and as to that was said in such conversation, or give testimony explanatory of it, without infringing the provisions of the statute (Code, § 2765) forbidding either party to a suit from testifying against the other as to any transaction with, or statement by, a deceased person, whose estate is interested in the result of the suit; but the plain-

tiff's evidence must be limited to the credibility of the witness or weight to be given his testimony, and can not be considered by the jury as establishing the truth of any fact testified to by plaintiff as having been stated in said conversation; and in such case, the question to the plaintiff, "State what occurred in that conversation?" is too broad, and an objection to such a question is properly sustained.

3. *Same; declaration of a deceased person to his landlord as to who was interested in his business, made while in possession of premises, admissible.*—Where, in an action against the maker of a note, the defense is that the note had been paid by the defendant, who was the administrator of his deceased surety's estate, turning over to the plaintiff personal assets of his intestate's estate, and one of the issues is whether the plaintiff or defendant's intestate owned the business, out of which the assets turned over to the plaintiff arose, it is competent for the plaintiff to prove declarations made by the decedent, when renting the premises wherein the business was carried on, and while in possession, tending to show that the plaintiff was interested in said business; and when the landlord has testified, on direct examination, that he rented the premises to the defendant's intestate, it is error to refuse to allow the plaintiff, on cross-examination, to ask the landlord, if when the decedent "made the lease   *   *   * didn't he say the plaintiff was interested with him in the business?"

4. *Plea of payment; sufficiency.*—A plea of payment which avers that the debt sued on was paid from the goods of the debtor, or from the assets of the debtor's estate, implies that the goods or assets were received by the plaintiff creditor in payment of the debt; and it is unnecessary that such a plea should aver in detail in what way the debt was paid by the goods or from the assets of the debtor's estate.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action brought by the appellant, Joe Frank, against the appellee, W. A. Thompson, and counted on a promissory note, which was executed by the defendant, W. A. Thompson, and F. P. Thompson. The defendant pleaded several pleas of set-off, and also the following pleas: "2d. That said defendant owes nothing on said note. 3d. That said note has been paid and discharged, before this action was commenced, from the assets of the estate of Frank Thompson in the hands of the said plaintiff." To the third plea the plaintiff demurred on the grounds: *first*, that it does not show in what way the note was paid from the estate of the said Frank Thompson in the hands of the plaintiff; *second*, that it does not state the facts from which the court could know whether or not the note sued on

had been discharged, but merely states the conclusion of the pleader; *third*, the plea is too indefinite, in that it does not set forth with sufficient particularity in what way the said note was discharged; and, *fourth*, because said plea does not aver facts showing that the plaintiff has disposed of any of the estate of said Frank Thompson. This demurrer to the third plea was overruled, and the plaintiff duly excepted thereto.

The note was introduced in evidence; and there was no dispute as to the validity of it, or as to the correctness of the credits, or as to the attorney's fee stipulated for in the note. It was executed on August 12, 1890, and payable to the order of the plaintiff sixty days after date. As is stated in the opinion, the evidence showed that the note sued on evidenced a debt of the defendant, W. A. Thompson, and that F. P. Thompson was a surety on said note.

The evidence for the defendant tended to show that in the spring and summer of 1890, F. P. Thompson was engaged in the saloon business in the city of Birmingham, having two places of business; that said F. P. Thompson being in bad health left Birmingham some time in August, and turned over his business to the plaintiff, Joe Frank; that said F. P. Thompson died in November, 1890; that the defendant, W. A. Thompson, qualified as the administrator of the estate of F. P. Thompson, and that the plaintiff, Joe Frank, turned over to him certain accounts belonging to the estate of F. P. Thompson, which accounts the defendant redelivered to the plaintiff, Joe Frank, upon an agreement that they, together with the property of F. P. Thompson in the saloons, should be applied to the payment of the said note, and the balance, if any, turned over to the defendant.

The testimony for the plaintiff, in rebuttal to the defendant's testimony, tended to show that the saloons kept by F. P. Thompson were the property of the plaintiff, Joe Frank; and that said F. P. Thompson was manager of them by the employment of said Joe Frank; that the licenses for doing the business in each of the saloons were taken out by the plaintiff, or by Joe Frank & Co.; and that the proceeds of the business done in them were turned over to the plaintiff by his direction. The testimony for the plaintiff further tended to show that the

defendant had repeatedly promised to pay the note since the death of F. P. Thompson.

Upon the introduction of one G. A. Thompson, brother of the defendant, as a witness for the defendant, he testified as follows: "That Frank Thompson was at his brother's in North Birmingham the latter part of July; did not know how long he was there—only a few days; that he remembered that Frank Thompson had a conversation with the plaintiff at the latter's place of business in Birmingham. This was some time in August, 1890; that Frank Thompson and witness came to town in a carriage and went to plaintiff's place of business, and Frank Thompson went in and staid some time, while witness sat in the carriage; that he then came out and got in the carriage to go to North Birmingham, and plaintiff came to the carriage, and Frank Thompson told plaintiff that he was going out to his father's and that he would be back in fifteen days. Plaintiff told him to go to his father's, and stay until he got well, and Thompson then told the plaintiff to take charge of his business— or the business, he could not recollect which—until he returned, and furnish such things as were needed in the saloons and keep a strict account of it until he returned. This was some time in August."

E. B. McCary was introduced as a witness in behalf of the defendant, and testified that he knew Frank Thompson in his lifetime; that he heard a conversation between him and plaintiff in August, 1890; that Thompson told plaintiff he was sick and going to his father's in Fayette county, and said: "Mr. Frank, I am going home to be gone fifteen or twenty days; you take charge of my business and run it while I am gone, and anything the boys need here, furnish it for them;" and Mr. Frank told him to go home and stay until he got well, and that he would attend to the business while he was gone. On cross-examination, this witness could not say whether Frank Thompson said "my business" or "the business."

Upon the introduction of the plaintiff, Joe Frank, as a witness, he was asked among others, the following question: "You heard detailed here this morning a conversation that is said to have occurred in front of your store while Mr. Thompson was in a carriage, before he went to his father's; state what occurred in that conversation?" The defendant objected to the question, which

objection the court sustained, and the plaintiff excepted.

Upon the introduction of one Shelton, as a witness in behalf of the defendant, he testified that he rented to F. P. Thompson the saloon in which he carried on business. The witness was then asked the following question: "Will you just state whether or not you had a contract of rental with him?" Plaintiff objected to this question on the ground that it was incompetent, irrelevant and immaterial, which objection the court overruled, and the plaintiff excepted. The witness answered: "Yes, sir, I made a contract with him." The witness was then asked what rent he paid. The plaintiff objected to this question on the ground that it was illegal and irrelevant, which objection the court overruled, and the plaintiff excepted. The witness then answered, that he paid rent for the whole term he was here, and after he left the plaintiff paid the rent; that plaintiff commenced paying rent some time in the summer of 1890, and continued to pay down to 1892. The plaintiff then asked the witness this question, on cross examination: "When Mr. Thompson made the lease you speak of, didn't he say that Mr. Frank, the plaintiff, was interested with him in the business?" Defendant objected to this question, which objection the court sustained, and the plaintiff excepted.

The court in its oral charge, among other things, instructed the jury as follows: "That if from the evidence they should believe that the saloon property and the accounts belonged to F. P. Thompson at the time of his death, and that there was an agreement between the plaintiff and defendant, as administrator of the estate of F. P. Thompson, deceased, that the effects of Frank P. Thompson in plaintiff's hands, and the proceeds thereof collected and to be collected by plaintiff, should be applied to the payment of the note, and they should further find that plaintiff did have in his hands effects of Frank P. Thompson's estate, and that pursuant to such agreement he received, as the proceeds of the sale of the property and collections of said accounts, money sufficient to pay said note, then such receipt and retention of the money under such agreement would amount to a payment of the note." To this portion of the oral charge the plaintiff duly excepted, and also separately excepted to the court's refusal to give each of the following writ-

ten charges requested by him : (1.) "The court charges the jury that the evidence in this case does not show or tend to show that there was an agrement between the plaintiff and the defendant, that the effects of Frank P. Thompson were to be taken by plaintiff as payment on the note sued on." (2.) "If the jury believe the evidence, they must find the issue in favor of the plaintiff." (3.) "If the jury believe the evidence, they must find the issue in favor of the plaintiff, and assess his damages at the face value of the note sued on, less the credits thereon, with interest on the balance, from the maturity of the note at eight per cent per annum, and in addition thereto thirty-five dollars as attorneys' fees." (4.) "I charge you, gentlemen of the jury, that there is no dispute as to the validity of the note or the credits thereon, or as to the amount of attorney's fees, which it was agreed by counsel on each side should be thirty-five dollars, and you must find the issue in favor of the plaintiff, unless you believe from the evidence that certain assets of the estate of F. P. Thompson, deceased, were turned over to the plaintiff prior to the death of said F. P. Thompson, with an agreement between the said F. P. Thompson and the plaintiff that such assets should be collected by the plaintiff and credited on said note." (5.) "I charge you, gentlemen of the jury, that there is no evidence in this case that any payment had ever been made on the note mentioned in the complaint except the amounts credited on the note, and if you believe the evidence you must find the issue in favor of the plaintiff, and assess his damages at the face value of the note, less the credits entered thereon, together with interest on the balance from the maturity of the note, at eight *per cent. per annum,* and thirty-five dollars attorney's fees." (6.) "Even if the jury should believe from the evidence that the plaintiff had in his possession after the maturity of the note sued on assets of the estate of F. P. Thompson, deceased, more than sufficient to pay the amount due on said note, this would not constitute a payment of the note, unless the jury should further find from the evidence that it was agreed between said F. P. Thompson in his life time and the plaintiff, that the said assets should be received in payment of said note, or that said assets should be sold by the plaintiff, and the proceeds applied to the payment of the note, and that the plaintiff

did, as a matter of fact, sell the assets and apply the proceeds to the payment of the note." (7.) "In order to establish the special plea of payment, filed by the defendant, it is incumbent on the defendant to show that the saloon, or one of them belonged to Frank P. Thompson, and that an agreement was entered into between Joe Frank and Frank P. Thompson that said Joe Frank would convert the same into cash and apply it to the payment of the said debt." (8.) "If the jury believe the evidence in this case, they will find for the plaintiff." (9.) "The burden of proof is on the defendant to show that the saloons or one of them belonged to Frank P. Thompson; and if he has failed to show this by the evidence to the satisfaction of the jury, then it is the duty of the jury to find a verdict for the plaintiff for the amount of the note sued on, with interest on the amount of said note from the maturity thereof, less the credits entered on said note, together with an attorney's fee of thirty-five dollars."

At the request of the defendant, the court gave the following written charge to the jury, to the giving of which the plaintiff duly excepted: (1.) "Although the jury may believe from the evidence that the licenses were taken out in the name of Joe Frank & Co., and other advances were made by Joe Frank or Joe Frank and others as Joe Frank & Co., yet if the jury further believe from the whole evidence in the case that in fact the stock of goods, wares, liquors and merchandise and business belonged to F. P. Thompson, deceased, one of the makers of the note sued on in this action, and that it was understood and agreed by and between the plaintiff and W. A. Thompson, as administrator of the estate of F. P. Thompson, deceased, that the plaintiff Joe Frank should be paid out of. the assets of said F. P. Thompson, which went into the possession and control of said plaintiff (if the jury believe such assets went into the hands of said plaintiff), and that a sufficient amount of money was realized by the plaintiff from said assets with which to pay said note, then the jury should find for the defendant."

There was judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

[Frank v. Thompson.]

LANE & WHITE, for appellant.—1. The court erred in overruling the demurrer to the third plea.—*Carmelich v. Mims*, 88 Ala. 335; *McAfee v. Glen Mary C. & C. Co.*, 97 Ala. 709. The court erred in sustaining the objection interposed to the question propounded to the witness Shelton on cross-examination.

BUSH & BROWN, *contra*.

COLEMAN, J.—F. P. Thompson and the defendant, W. A. Thompson, executed their promissory note to the plaintiff, Joe Frank. The evidence tends to show, that the note was given for a loan of money made to W. A. Thompson. F. P. Thompson died, and W. A. Thompson duly qualified as his administrator. The plaintiff sued W. A. Thompson individually and alone upon the debt. The evidence tended to show that the plaintiff, Joe Frank, and W. A. Thompson, administrator, entered into an agreement by which W. A. Thompson turned over to the plaintiff certain assets of the estate of F. P. Thompson in payment of the note, and that they were received by him as a payment of the note.

One of the questions raised by the pleadings and by instructions of the court to the jury is, whether an agreement by which an administrator turns over personal property of his intestate to his own creditor in payment of his debt, and which is received by the creditor in payment, is in law binding upon the creditor. We do not doubt the correctness of the ruling of the court, in holding that such an agreement, fully executed, is binding upon the administrator and the creditor. The title to the personal property descended to and vested in the administrator. The distributees of the estate, or creditors, other than plaintiff, probably an administrator. *de bonis non*, might elect to avoid such a transaction, and hold the creditor liable for assets thus received, or may let the transaction stand, and charge the administrator for a devastavit. Certainly a creditor who has received and retains the personal assets of an intestate from the personal representative of the decedent in payment of a debt, can not be heard to say his debt has not been paid.— *Woods v. Legg*, 91 Ala. 511; *Hopper v. Steele*, 18 Ala. 836; *Swink v. Snodgrass*, 17 Ala. 653; *Kavanaugh v. Thompson*, 16 Ala.

818.   The instructions given to the jury by the learned court cover the whole law of the case, and are free from error.   The court did not err in refusing charge No. 9 requested by the plaintiff.   The charge as written at least was calculated to mislead, in that it made the ownership of deceased to the assets turned over to plaintiff, depend upon his ownership of the saloons, or one of them.   The word saloon as used here might have been construed to include more than the business and assets. The proper issue was whether the assets turned over and received by plaintiff were assets of the estate of Frank P. Thompson.

The witness G. A. Thompson testified to a conversation he heard between the deceased and plaintiff, a short time before the death of the deceased, in which he said that F. P. Thompson stated to plaintiff, that he was going out to his father's to stay until he got well and that he would be back in fifteen days, and that deceased "requested the plaintiff to take charge of his business, or the business, until he returned and to furnish such things as were needed in the saloons, and to keep a strict account of it until his return." We are of opinion that the facts are sufficient to authorize the inference that the conversation testified to by the witness E. B. McCary was the same as that testified to by G. A. Thompson.   In addition to what Thompson testified, McCary testified, that plaintiff replied to F. P. Thompson "to go home and stay until he got well, and he would attend to the business while he was gone."   When plaintiff was being examined in his own behalf, his counsel, referring to the conversation testified to by G. A. Thompson, asked him "to state what occurred in that conversation," to which question the court sustained an objection.   The assignment of error based upon this ruling of the court presents a question not free from difficulty. Parties in civil suits are made competent witnesses, except that neither party shall be allowed to testify against the other as to any transaction with, or statement by any deceased person, whose estate is interested in the result of the suit, unless called to testify thereto by the opposite party.—Code, § 2765.   We do not think the statute would exclude a party, against whom such evidence had been offered as that given by Thompson and McCary, from saying whether he had such a conversation, or from

[Frank v. Thompson.]

stating what he did say in such conversation, or explanatory of it. His evidence, however, should be limited to the credibility of the witnesses or weight to be given to the evidence of the witnesses testifying to the conversation, and should not be considered by the jury as establishing as true any fact testified to by the party as having been stated by him in the conversation. We think the distinction clear, and the jury should be properly instructed, as to how far it was to be considered by them. We think the question, "State what occurred in that conversation," too broad. The witness might have answered in response as to some transaction with the deceased prohibited by statute, and not simply as contradictory or in qualification of the statement made by Thompson. It should have been limited strictly to the statements of the witnesses. Under this view, the court did not err in sustaining an objection to the question.

The court erred in sustaining an objection to the question propounded on cross-examination to the witness Shelton. This witness had testified on direct examination that he rented to F. P. Thompson the saloon in which the business was carried on. It was competent to show that at the time of making the rental contract, F. P. Thompson stated that plaintiff was interested with him in the business. As an independent proposition, it was competent for the defendant to prove declarations of F. P. Thompson, while in possession, and carrying on the business, that it was his business, that it belonged to him, and equally competent to show by his declarations that the plaintiff was interested in the business, or that the business did not belong to him. Moreover, it was a prat of the res gestae of the renting, and admissible on this ground.

The form given in a Code for a plea of payment is very brief. It is only necessary to aver, that the defendant had paid the debt, for which the suit was brought, before the action was commenced. All necessary facts to constitute a payment, are implied in these averments. So when a plea of payment avers that the debt was paid from the goods of the debtor, or the assets of the estate, this averment implies that the goods were received by the creditor, under an agreement that they were taken in payment. Unless the proof shows this, the plea of payment is not sus-

[*Ex parte* Highland Avenue & Belt Railroad Company.]

tained. The court did not err in overruling a demurrer to the plea.

We find no error in the record, except the single one of excluding the question to the witness Shelton.

Reversed and remanded.