48 So.2d 28

**HOMEWOOD DAIRY PRODUCTS CO., Inc.**
**v. ROBINSON.**

**3 Div. 575.**

Supreme Court of Alabama.

Oct. 12, 1950.

Rives & Gidbold, of Montgomery and Rosenthal & Rosenthal of Birmingham, for appellant.

J. R. Bell, of Hayneville, and Watkins C. Johnston, of Montgomery, for appellee.

FOSTER, Justice.

This is a suit in assumpsit, in which appellee sued appellant and recovered a judgment on a claim growing out of a contract for the sale of milk.

Appellee was a producer of milk in two locations in Lowndes County. Appellant processed and distributed the milk products. They operated under regulations of the State Milk Control Board. That board fixed a minimum price for such transactions but no maximum. The parties could agree on a figure in excess of the minimum. They did that in this instance. There was provision for making the contract so that under certain conditions when a surplus was produced, appellant could claim a rate less than had been argeed on for the amount of the surplus. The fact and amount of the surplus were as provided in the rules made by the board.

In February 1946 two officers of appellant, doing business in Jefferson County as well as Lowndes County, one the president George Burrell, and the vice president Sam Burrell, with one Blackmon also representing appellant, went to see appellee with a view of buying the output of his two dairies. The transaction was with the two officers of appellant acting jointly and was had at Robinson's Switch. The only difference material to the issues as to the nature of. the agreement then made and their conversations is that appellee contends and testified that there was no limit fixed as to the duration of the contract. He is corroborated by Blackmon as to that.

Sam Burrell testified it was to continue one year from April 1, 1946 to April 1, 1947. They agree that by such contract, appellant was to take all the milk output of both dairies delivered at one of them at a base figure, with no surplus, and that appellant was to pay appellee twenty-five cents per hundred pounds for hauling the milk produced at one dairy to the other for delivery there.

Appellee testified that the agreement was not finally concluded but he was to consider and let them know his decision; that later he saw George Burrell, president of the company, and had an agreement about cans and he told George he accepted the terms of the contract.

Objection was made to the testimony of appellee and the questions to him about what occurred separately on the two occasions because George Burrell was then dead, applying the dead man's statute. Section 433, Title 7, Code.

In response to that objection appellee's counsel took the position before the trial judge that George's estate is not interested, it being a suit against the corporation. It was not insisted that there was no evidence that George was then dead, as the evidence subsequently showed. But we think he should have made mention of such claim when he was responding to the objection which expressly stated that he was dead. So that appellee should not now have the benefit of such contention.

■ In the matter here material several states have interpreted their statutes, respectively, which prohibit testimony by an interested witness as to a transaction with or statement by the deceased person under circumstances there stated. The concensus of opinion is that the transaction with or statement by a deceased person is not such within such statute when it was with him and one or more others associated with the deceased in the transaction, for such other one still living may give his version of the transaction, and, therefore, the reason for the exclusion does not exist. Johnson v. Townsend, 117 N.C. 338, 23 S.E. 271; Goss v. Austin, 11 Allen, Mass., 525; Fulkerson v. Thornton,

68 Mo. 468; Peacock v. Stott, 90 N.C. 518; Kale v. Elliott, 18 Hun, N.Y. 198; Palm Beach Estates v. Croker, 106 Fla. 617, 143 So. 792; McConnon & Co. v. Kuhlmann, 220 Mo.App. 821, 278 S.W. 822; Paddock v. Potter, 67 Vt. 360, 31 A. 784.

While this Court does not seem to have had the question before it, we think it is a fair construction of our statute, and does not conflict with our holding, that the presence of a disinterested party hearing the transaction does not make the evidence legal if otherwise within the purview of the statute. Southern Natural Gas Co. v. Davidson, 225 Ala. 171(4), 142 So. 63; Frank v. Thompson, 105 Ala. 211, 16 So. 634.

■ So that there was no error in respect to the ruling insofar as the question related to the transaction with George and Sam Burrell, because Sam was alive and testified on the trial giving their version of what occurred.

■ But such objection was also made to the evidence of appellee to the transaction between George Burrell and appellee later when appellee advised him of his acceptance of the contract in which George agreed to furnish the cans. Of course the fact that a representative of George's estate is not sued and that his estate may or may not have a pecuniary interest because he was a stockholder in the company, see, Montgomery & Wetumpka Plank-Road Co. v. Webb, 27 Ala. 618, would not affect the disability of appellee to testify as to the transaction with him since George was then acting as the president and agent of the company, which is sued and has a pecuniary interest in the suit. First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64; National Union Fire Ins. Co. v. Weatherwax, 247 Ala. 143, 22 So.2d 733; Benson & Co. v. Foreman, 241 Ala. 193, 1 So.2d 898; Alford v. Darnell, 252 Ala. 565, 42 So.2d 260; Tabler v. Sheffield Land, Iron & Coal Co., 87 Ala. 305, 6 So. 196.

But there is no controversy in respect to that feature of the transaction. No one claims that the company was not to furnish

the cans and did so: the suit involves no controversy as to them. No one contends that appellee did not accept the terms of the contract as discussed when they were all present. So that such evidence of appellee was not prejudicial to appellant. We do not think there was reversible error in respect to that contention.

The basis of appellee's claim is twofold. One is that appellant paid him for the May 1948 milk partly on a surplus price basis, which makes a difference for that month's product of $797.44 (Record p. 34). The other claim is that under the contract the haulage was to be paid for throughout the contract including the period from April 1, 1947 to October 15, 1948; but under appellant's version of their relations it was not due to pay appellee for hauling after April 1, 1947, when, as it contends, the first contract ended and another was made over the telephone when no haulage was to be paid for. Appellee continued to deliver the milk until October 15, 1948, when he terminated the contract. The amount claimed for haulage was $917.37.

Appellant also contends that some of the checks given appellee, after the date of his claims respectively showed that they constitute payment in full as there stated and constituted an accord and satisfaction. This contention was made by requested written charges which were refused by the court and assigned as error.

There was no controversy as to the correctness of the amounts which make up the two aspects of the claim, if there is a liability as to one or both respectively.

■■ As we have indicated, there is a serious conflict in the evidence as to the terms of the contract discussed at Robinson's Switch, when George and Sam Burrell and Blackmon representing appellant were present with appellee. Sam Burrell testified that the contract was for one year only. Both aspects of appellee's claim arose after the expiration of that year. Appellee claims that no time limit was agreed on and Blackmon corroborated appellee. With no time limit either party could terminate it on sufficient notice. In June 1947, after the expiration of the first year, there was a telephone conversation between Sam Burrell and appellee. They differ as to its nature and effect. It was for the jury to settle that conflict. If the contract was without limit as to time and there was no change in its terms, appellant would owe appellee the full amount of his claim on both aspects subject to accord and satisfaction. Having found for appellee the jury resolved that conflict in his favor. There was evidence which substantially supported that finding. It is not for us to weigh its effect, unless the great preponderance of the evidence was against the finding. We do not think that such is its effect.

We are now ready to consider the claim of accord and satisfaction. First as to the May 1948 surplus claim. Throughout their dealings that was the only month in which appellant claimed a surplus. The jury by its verdict found that the contract was without surplus and not modified so as to include surplus in that month. Therefore the jury found that the full amount claimed by appellee on that account was just as well as unpaid. There were three checks in evidence which appellant claims in brief had the effect of discharging such liability. One was No. 492, dated September 25, 1948, for $2,235.54 with a memorandum on one said: "For milk through 9–15–48 in full a/c to date." One was check No. 520, dated October 5, 1948, for $2,188.26 with a side memorandum: "Milk in full through 9–30–48." One was check No. 580, dated October 25, 1948, for $89.44 with a side memorandum: "A/c in full." The evidence shows that bills for milk and hauling were paid twice a month, for the account arising from the 1st to the 15th in one check and then from the 15th to the 30th or 31st in another. For the period May 1, 1948 to May 15, 1948, in which the surplus was claimed by appellant, the first check was for $2,305.93, not including haulage. Had it all been figured at the base price it would have been $2,686.78, or a difference of $380.85. And for the period from May 15, 1948 to May 31, 1948, appellant also claimed a surplus and paid for milk $2,349.25, but without a surplus it would have been $2,765.84, or a difference of $416.59. A total difference for May 1948

would be $797.44, as claimed by appellee. The accuracy of the figures is not controverted. Those checks for the milk delivered that month had no memorandum as to payment in full. But following those checks, appellee testified he telephoned appellants about the error as to the surplus. That appellants never denied the liability and later agreed in person at the gin with appellee to pay that deficit for May and for the hauling (to be discussed later). Appellee's counsel stated to appellee while examining him as a witness (Record page 66): "You said you wanted to explain to me this thing which says 'Account in full,' which came in there through the 25th." (We presume he was referring to the check dated September 25, 1948, above mentioned.) Defendant's counsel: "Your honor, we don't think he is entitled to any explanation, that which is documentary evidence speaks for itself. * * * We would like a ruling on our objection to that." (Answer by the witness): "I would interpret that like I have always—the two weeks period for the milk." The court: "You haven't objected yet, Mr. Godbold." Mr. Godbold: "Well we certainly object, your honor." The court: "The objection is overruled." Mr. Godbold: "We except." There was no further objection, motion or exception in that connection. This constitutes an assignment of error. We do not think there is any question there properly presented or which needs discussion. The witness then testified as to check No. 580, October 25, 1948, for $89.44, that it was the exact figure for one day's milk, being the last day at the base price. That it was for the amount of that account in full that was paid. That all the other checks so marked were payments in full for the amount of the account for milk for a two weeks' period, respectively.

Sam Burrell testified that after May 1948, when the surplus was claimed, appellee called him over the telephone and he merely asked him if there would be a surplus in June and "I told him there would not be as I had sold all the milk. I did not then nor later at the gin agree to pay at the rate of the base for this surplus." He further testified (Record pages 82 and 90)

that such notation on a check means that it is a payment of all they owe up to the time specified. There was objection to this by appellee, not here involved. We observe that the checks marked "in full" were given for an admitted liability for milk without reference in terms to the account for the May milk. They did not contain any sum except for another admitted liability. There was a separate statement and account rendered and paid twice a month. Each was a separate bill rendered and paid. None referred in terms to any other bill or statement. In order to be a satisfaction there must be an accord. That is, an agreement to accept in extinction of the obligation something different from or less than that which the creditor is claiming or entitled. Section 1, Title 9, Code. The acceptance of the consideration of an accord satisfied the obligation. Section 3, Title 9, Code. Of course the satisfaction and the accord may be simultaneous, but to have such effect it must appear that their dealings were intended to embrace the particular matter claimed to be controlled by them.

The intent or meaning of such a memorandum as appears on the checks is to be ascertained as in case of other written instruments, so that express unequivocal terms cannot be varied by parol. Steenhuis v. Holland, 217 Ala. 105, 115 So. 2. But the ascertainment of such intent, there mentioned, when the writing is in equivocal terms, section 381, Title 7, Code, is aided by the course of dealing of the parties; the status of their accounts then existing; the statements then rendered and paid; the custom of fixing the amount of a check, known to both parties and the nature and terms of their contract. When its meaning is so influenced it becomes a question for the jury. Stegall v. Wright, 143 Ala. 204, 38 So. 844; Thompson v. Nashville C. & St. L. R., 160 Ala. 590, 49 So. 340; Dwight Mfg. Co. v. Word, 200 Ala. 221 (18), 75 So. 979; Eufaula National Bank v. Passmore, 102 Ala. 370, 14 So. 683.

Moreover, section 381, Title 7, Code, is to be construed in *pari materia* with section 4, Title 9, Code. National Life & Accident Ins. Co. v. Karasek, 240 Ala. 660,

200 So. 873, 877. That is, that "An obligation is extinguished by a release therefrom to the debtor by the creditor, upon a new consideration, or in writing with or without new consideration."

Here the only writing was a check marked "milk in full." If it was intended to cover the surplus computed on the May account, the only writing signed by appellee in connection with its settlement was an indorsement of the check. That is not a release in terms under section 4, Title 9, supra, but it is a receipt under section 381, Title 7, supra, having the effect of a release. Alabama-By-Products Corp. v. Kennedy, 228 Ala. 410, 153 So. 862. Prior to the adoption of section 4, Title 9, Code, such a receipt to be effective as a release was required to have a new consideration as in the discharge of a disputed or controverted claim. Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662. A receipt to be operative as a release must satisfy section 4, Title 9, supra. If it is not in writing it must be supported by a new consideration. If in writing, this is not necessary. Grand Lodge Knights of Pythias of N. Am. v. Williams, 245 Ala. 220, 16 So. 2d 497; Carns v. Commonwealth Life Ins. Co., 233 Ala. 215, 171 So. 382.

From those cases it follows that under existing statutes, although there is no dispute as to an existing claim and an amount is paid and accepted in settlement of that claim, though of a lesser sum, and a written receipt reciting that it is in full of it is given and received, a further writing or a new consideration would not be necessary. See, McCoy v. Wynn, 215 Ala. 172, 110 So. 129; Ex parte Southern Cotton Oil Co., supra. They do not conflict, since they were decided prior to the adoption of section 4, Title 9, supra.

The case of Gottlieb v. Scribner's Sons 232 Ala. 33, 166 So. 685, 686, was decided after the adoption of section 4, Title 9, supra. It was held that a check tendered and marked "account in full to date" and accepted and cashed was a satisfaction because there was a dispute as to the claim. The Court did not take note of section 4, Title 9, section 5643, Code of 1923, providing that no new consideration is necessa-

ry when the release is in writing. That case does not mean that the statute would not have been held controlling had it been relied on and considered. When the release is in writing, it must be given effect according to its intent expressed in plain terms, Alabama By-Products Co. v. Kennedy, supra, and no new consideration is necessary. Grand Lodge v. Williams, supra; Carns v. Commonwealth Life Ins. Co., supra. But what is equivalent to a new consideration is necessary if the release is not in writing under section 4, Title 9, supra, as before its adoption. Penney v. Burns, 226 Ala. 273, 146 So. 611.

Insofar as the claim for hauling is concerned, there is only one check which could possibly cover a dispute as to it. That is the check for $89.44, October 25, 1948, given a few days after this suit was brought marked "a/c in full". This check was for the exact amount of the account for milk for one day. A finding by the jury that it did not cover a claim for hauling milk extending from April 1, 1947 to the last day of the milk delivery in October should not be set aside, and a requested charge to the jury that it was an accord and satisfaction of that claim was properly refused since the circumstances justified a verdict that it was not intended for anything else than to settle one day's bill. Eufaula National Bank v. Passmore, supra; Stegall v. Wright, supra.

The requested charges pretermit a finding by the jury that the memoranda on the checks were intended by the parties to refer to the claims in dispute; that is, to the May 1948 surplus and the haulage from April 1, 1947 to October 1948. The terms of the memoranda in connection with the circumstances may have referred only to the statements rendered at the time the checks were drawn with no reference to the other claims.

That issue was one for the jury and appellant's charges put the burden of so deciding on the court. They were properly refused. The issue primarily was whether the contract for base rates for milk extended so as to include May 1948, and the haulage from April 1, 1947 until the contract

204

was terminated. Having found for plaintiff on those issues, it was for the jury to determine whether the memoranda on the checks were intended to refer to the dispute as to the May 1948 surplus and to the claim for haulage from April 1, 1947 to October 1948 when the contract was terminated.

We think there was ample evidence to support a finding for plaintiff on the contention that they did not refer to either such claim.

Affirmed.

BROWN, LAWSON and STAKELY, JJ., concur.