282 So.2d 244

**Elna S. LOWERY**

v.

**Louise STINSON, as Executrix of the Estate of Willie Elijah Stinson, Deceased.**

**SC 415.**

Supreme Court of Alabama.

Aug. 30, 1973.

Izas Bahakel, Birmingham, for appellant.

Frank Ellis, Jr., Columbiana, for appellee.

testimony to the effect that on January 5, and January 11, 1971, Dr. Stinson came to the house of Mrs. Lowery and received a personal check from claimant on each date in the amounts of $6,505.23 and $2,047.70, respectively. According to the testimony of claimant, these checks represented loans to Dr. Stinson which were to be repaid with interest and which were requested by the decedent in these exact amounts. Claimant further testified that the decedent, Dr. Stinson, came to her house some four to six weeks later, after the checks were endorsed and negotiated, and had claimant write on the two checks that they were loans to be paid back at 6% interest. This notation was neither initialed nor signed by Dr. Stinson, but was allegedly witnessed by a Mrs. Fletcher, who had lived off and on with claimant for twenty-five years, who testified to the same.

Contestant on the other hand presented evidence that the two checks given by claimant to the decedent represented a division of assets of two estates in which decedent and claimant were interested and were not loans. The trial court apparently chose to believe this latter explanation of the two checks.

Claimant asserts ten assignments of error on this appeal, but assignments of error (1), (6), (7) and (9) are waived for failure to substantially argue such assignments in brief. Rule 9, Revised Rules of Practice in the Supreme Court, Code of Alabama 1940 (Recompiled 1958), Title 7, Appendix; Stevens v. Thompson, 279 Ala. 232, 184 So.2d 140 (1966); Thornton v. Tutt, 283 Ala. 72, 214 So.2d 425 (1968).

Assignments of error numbers (2), (3) and (4) assert error in overruling claimant's objection to the introduction of certain bank records. The thrust of this argument is that such records fail to qualify for the "Business Records" exception to the hearsay rule, in that there was no testimony by contestant's witness Mr. Latham, of the Iron and Steel Workers' Credit Un-

BLOODWORTH, Justice.

This is an appeal from the denial of a claim against the Estate of Willie Elijah Stinson. The claim was filed by the deceased's sister, appellant Elna S. Lowery, for money allegedly loaned by her to the decedent during his lifetime. The widow, Louise Stinson, as executrix of the estate and appellee herein, filed a contest of the claim in Circuit Court of Shelby County, Alabama, in Equity. The court denied the claim. Claimant appeals. We affirm.

Briefly, the facts are as follows. Claimant, Elna S. Lowery, is the sister of the decedent, Dr. Willie Elijah Stinson, who died on July 1, 1971. Claimant presented

**418**

ion, that he was personally familiar with the method or "standard operating procedure" used in making the subject records.

Claimant's argument is not well taken. Mr. Latham testified that the credit union kept daily records of deposits, withdrawals, and opening and closing of accounts with the credit union, that such accounts were kept in Mr. Latham's custody and control and under his supervision, that such records were made at the time of the transaction, and that such records were kept and maintained in the ordinary course of business. Such testimony clearly meets the requirements of Section 415 of Title 7, Code of Alabama 1940 (Recompiled 1958):

> "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible in evidence in proof of said act, transaction, or event, if it was made in the regular course of any business, and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, 'business' shall include business, profession, occupation, and calling of every kind."

The cases cited by claimant in no way support any additional requirement that the witness testify that he have personal knowledge of the "standard operating procedure" used in compiling such records. Therefore, the lower court's overruling claimant's objection to such records was correct.

■ Claimant has proceeded in her brief to challenge contestant's introduction of certain records of the First National Bank

through a Mr. Lee, but since this is not assigned as error, it is not before this court.

■ Assignment of error (5) claims error in overruling claimant's objection, and allowing contestant Louise Stinson to testify, to an alleged conversation between the deceased and the claimant in violation of the "Dead Man's Statute," Title 7, § 433, Code of Alabama 1940 (Recompiled 1958).

Section 433 provides in relevant part that no interested party shall be allowed to testify, "as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding * * *."

The record in question indicates it is contestant's testimony as to statements made by claimant in a conversation with the decedent in the presence of contestant, which is attempted to be shown. The record shows that the court carefully limited contestant's testimony to statements made by claimant in the subject conversation. (No statement by the decedent was offered.)

It is unnecessary for this court to decide, however, whether this limitation avoids application of the "Dead Man's Statute" because it appears that the instant case falls within an exception to the "Dead Man's Statute."

In Homewood Dairy Products Co., Inc. v. Robinson, 254 Ala. 197, 48 So.2d 28 (1950), in a suit on a claim growing out of a contract for the sale of milk, plaintiff was permitted to testify as to conversations with the defendant, deceased at the time of the trial, because the conversations were witnessed by a person associated with the deceased, namely his partner in business. There this court held:

> "In the matter here material several states have interpreted their statutes, respectively, which prohibit testimony by an interested witness as to a transaction with or statement by the deceased person under circumstances there stated. The

concensus of opinion is that the transaction with or statement by a deceased person is not such within such statute when it was with him and one or more others associated with the deceased in the transaction, for such other one still living may give his version of the transaction, and, therefore, the reason for the exclusion does not exist." [Citations omitted]

"While this Court does not seem to have had the question before it, we think it is a fair construction of our statute, and does not conflict with our holding, that the presence of a disinterested party hearing the transaction does not make the evidence legal if otherwise within the purview of the statute. Southern Natural Gas Co. v. Davidson, 225 Ala. 171(4), 142 So. 63; Frank v. Thompson, 105 Ala. 211, 16 So. 634.

"So that there was no error in respect to the ruling insofar as the question related to the transaction with George and Sam Burrell, because Sam was alive and testified on the trial giving their version of what occurred."

The case at bar should be governed by the same rationale. Contestant was the decedent's wife; she went with the decedent to claimant's house on the occasion in question allegedly to receive the decedent's share of "Papa's account"; she was present when the conversation took place and heard the statements of claimant. Contestant was not a disinterested bystander. Her interests were clearly aligned with those of her husband's in this transaction. Thus, the rationale of Homewood Dairy Products v. Robinson, supra, is satisfied—the witness was sufficiently associated with the decedent and had a sufficient community of interest with him that we may safely rely upon her to give the decedent's version of the transaction so that the reason for the exclusion does not exist. Therefore, the court's overruling of claimant's objection to contestant's testimony was not erroneous.

Assignment of error (8) claims error in the trial court's sustaining contestant's objection to the following question asked claimant on direct examination:

"Q. All right, that's what I'm asking. Now, there has been some testimony, something about some land that you had wanted to pay your brother for, was there any sort of understanding or agreement, that you would pay your brother, the late Doctor Stinson, any amount of money for any interest in any land?"

This question is clearly leading, and objection to it was properly sustained. The objection was explicitly directed to the form of the question, and the court specifically admonished counsel not to lead his witness in sustaining the objection. Counsel for claimant chose not to rephrase the question. The court was not in error.

In the final assignment of error, claimant complains that the court erred in finding against her and against the great preponderance and weight of the evidence.

A trial court's finding in an equity case upon oral testimony has the effect of a jury's verdict and will not be disturbed unless plainly and palpably wrong. Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962); Appeal and Error, § 1009(1), Alabama Digest, Vol. 2A.

In the case at bar, there is ample evidence to support the findings of the trial court. There was uncontested evidence that the notations on the checks, indicating that they represented loans, were written by claimant after both checks had been endorsed and negotiated. Contestant presented evidence to the effect that the checks represented a division of two estates in which claimant and the decedent were interested. There was further testimony that there were two deposits to claimant's checking account shortly before these two checks were paid to the decedent; that one check paid to decedent was exactly one-half of one of the recent de-

posits plus $5,000.00; that claimant had told her nephew on several occasions that she had paid decedent and his wife, the contestant, $5,000.00 for half interest in a parcel of land which had belonged to their father; that the other one of the two deposits was exactly twice the amount of the second check drawn to decedent and which purportedly represented assets of an estate in which they were both interested. Finally, there was testimony by claimant's nephew that claimant had offered him $1,000.00 from her recovery against the estate in this suit if he testified that the checks represented loans. The evidence is ample to support the trial court's final decree denying the claim against the estate.

Let the trial court's decree be affirmed.

Affirmed.

All the Justices concur except COLEMAN, J., not sitting.