320 So.2d 631

**Ralph Camenron LORENCE**

**v.**

**HOSPITAL BOARD OF MORGAN COUNTY,
Alabama, a public corporation, et al.**

**SC 1137.**

Supreme Court of Alabama.

July 10, 1975.

As Corrected on Denial of Rehearing
Oct. 2, 1975.

Chenault & Chenault, Decatur, for appellant.

Joe Calvin, Decatur, for appellees.

JONES, Justice.

The principle issue presented by this appeal is whether governmental immunity is available to a County Hospital Board as a valid defense to an action ex delicto.

■ We reverse the trial Court's order granting the motion to dismiss the tort counts. We hold that the trial Court did not err in granting the motion to dismiss the contract counts since the duty alleged is imposed solely by law and its alleged breach is tortious only. Accordingly, we affirm in part and reverse in part and remand for further proceedings not inconsistent with this opinion.

Inasmuch as this cause on remand is yet to be tried, the issue presented having reached this Court on the pleadings, we deem it inappropriate to discuss in detail the facts as alleged in the complaint. Suffice it to say, Ralph Camenron Lorence alleges that he suffered damages due to the negligence of an employee of the Hospital Board of Morgan County while acting within the line and scope of his employment.

Our consideration of this issue poses an almost overwhelming compulsion to review in depth the history—both legislative and judicial—as well as the philosophical evolution, of this legal precept. Because of the voluminous and exhaustive treatment previously accorded this entire field of law,[1] however, such an in depth analysis is neither desirable nor necessary. Our decision this date released in *Jackson v. City of Florence*, 294 Ala. ——, —— So.2d ——, abolishing the defense of sovereign immunity as to municipalities, compels the same result, founded on the same rationale, with respect to counties. *Jackson* held that municipal immunity, in actuality, was abolished by the legislature in 1907; and, since the "governmental/proprietary" distinction was court made, it was up to the courts to

---

1. Notably among the textwriters, see Borchard, Government Liability In Tort, 34 Yale L.J. 1 (1924), and Copeland and Screws, Governmental Responsibility for Tort In Alabama, 13 Ala.L.Rev. 296 (1961).

change the law to conform with the clear intent expressed by the legislature.

The bridge between *Jackson* (cities) and *Lorence* (counties) is necessarily dependent upon an affirmative reply to two questions. First, does the legal status of a municipality equate that of a county? Otherwise stated, do both fall equally within the legislative prerogative with respect to the right to sue and be sued? The answer is "yes."

■ Neither is the creation of the Constitution; both are creatures of statute. The fact and nature of their respective existence, as well as the duties, powers, and limitations, are governed solely by legislative mandate. The only distinction between the two entities is wholly immaterial to our inquiry—the city is a voluntary political unit within the state while the county is an involuntary political subdivision of the state. *Jones v. Jefferson County*, 206 Ala. 13, 89 So. 174 (1921); *Askew v. Hale County*, 54 Ala. 639 (1875).

■ The remaining question, then, is whether the legislature has exercised its prerogative with respect to county liability in like manner as to city liability? Here, again, as in *Jackson*, the answer is "yes." The legislature has expressed its prerogative in this regard through its passage of the following statutes:

Tit. 12, § 3. "Every county is a body corporate, with power to sue or be sued in any court of record."

Tit. 7, § 96. "Suit must not be brought against a county until the claim has been presented to the court of county commissioners or other similar governing body, and disallowed or reduced by the court, and the reduction refused by the claimant. The failure or refusal of such court or other similar governing body, to enter upon its minutes the disallowance or reduction of the claim for ninety days is a disallowance. Proof of the fact of presentation of such claim to such court of county commissioners or other similar

governing body may be made by parol evidence."

Tit. 12, § 115. "No claim against the county shall be passed upon or allowed by the court of county commissioners unless it is itemized and sworn to by the claimant, or some person in his behalf having personal knowledge of the facts; and all claims passed upon and allowed, according to this section, must be entered in the order in which they were allowed in a book kept for that purpose and filed for future reference, within two weeks after the term at which such allowances were made; and the testimony required in the allowance of a claim must show whether or not any part thereof has been previously paid. This section shall not apply to bonds and interest or interest coupons thereon, that have been lawfully issued by the county."

As Justice Thomas observed in *Calhoun County v. Brandon*, 237 Ala. 537, 187 So. 868 (1939), in recognition of these legislative expressions, "A county is given the right to sue and be sued, as are individuals."

Just as in the case of municipalities, the court, in spite of clear legislative language to the contrary, persisted in perpetuating the "King can do no wrong" thesis. Out of this jungle of court made law emerged the perverted interpretation that what the legislature really meant by the expression "with power to sue or be sued" was to subject the county to suits sounding in tort only when it was performing an act specifically authorized by the legislature and where liability was expressly imposed by the statute; and that a county was immune from suits in any case involving the exercise of their governmental functions. *Garrett v. Escambia County Hospital Board*, 266 Ala. 201, 94 So.2d 762 (1957); *Laney v. Jefferson County*, 249 Ala. 612, 32 So.2d 542 (1947).

While it is true that the legislature has not subsequently exercised its prerogative, with regard to counties, to expressly pro-

vide that they may be sued for the negligence of their agents, servants, and employees while acting within the scope of their authority, as it has done with regard to municipalities, the legislative equivalent was exercised with regard to counties in the establishment of county hospital boards. Tit. 22, § 204(24), Code of Alabama 1940 (Recomp.1958), was passed by the legislature in 1949. It expressly provides that county hospital boards are empowered "to sue and be sued and to defend suits against it [and] to provide for such insurance as the corporation may deem advisable."

We believe it is clear that the legislature had no intention to limit such suits to actions sounding in contract. Had it so intended, it could have so provided. This it did with regard to municipal hospitals by expressly providing that they are empowered "to sue others and to prosecute suits; to be sued by others in any form of litigation *other than an action ex delicto*." [2] (Emphasis supplied.) No such limitation appears in the legislative language contained in Tit. 22, § 204, which authorizes the creation and operation of county hospital boards.

■ We are not to be understood as saying that our holding would be different had the statute been silent as to the right of the county hospital board to be sued. Neither this question nor the question of the county's general liability is before us. What is before us is the immunity question with respect to county hospital boards; and because the statute authorizing such corporate entity expressly provides for suits against them, *Jackson*, in its holding and rationale, compels a like conclusion.

We overrule *Garrett v. Escambia County Hospital Board*, supra, and *Jenkins v. Houston County Hospital Board*, 284 Ala. 180, 223 So.2d 583 (1969). We do not overrule old case law lightly or flippantly. But, where precedent can no longer be supported by reason and justice, we perceive it our duty to reexamine, and if need be, overrule court made law.

The quaint poetic lines of Sam Walter Foss put in perspective the philosophy of those courts which feel compelled to sacrifice their sense of reason and justice upon the altar of the Golden Calf of precedent.

One day through the primeval wood
A calf walked home, as good calves should;
But left a trail all bent askew,
A crooked trail, as all calves do.

Since then, three hundred years have fled,
And, I infer, the calf is dead.
But still he left behind this trail,
And thereby hangs my moral tale.

The trail was taken up next day
By a lone dog that passed that way;
And then a wise bell-wether sheep
Pursued the trail o'er vale and steep,
And drew the flock behind him, too,
As good bell-wethers always do.
So from that day, o'er hill and glade,
Through those old woods a path was made,

And many men wound in and out,
And bent and turned and dodged about,
And uttered words of righteous wrath,
Because 'twas such a crooked path;

But still they followed—do not laugh—
The first migrations of that calf,
And through this winding woodway stalked
Because he wabbled when he walked.

This forest path became a lane,
That bent and turned and turned again;
This crooked lane became a road,
Where many a poor horse, with his load,

Toiled on, beneath the burning sun,
And traveled some three miles in one.
And thus a century and a half
They trod the footsteps of that calf.

2. Tit. 22, § 204(41h).

The years passed on with swiftness fleet,
The road became a village street,
And this, before men were aware,
A city's crowded thoroughfare.

And soon the central street was this
Of a renowned metropolis.
And men two centuries and a half
Trod the footsteps of that calf.

Each day a hundred thousand rout
Followed the zigzag calf about;
And o'er his crooked journey went
The traffic of a continent.

A hundred thousand men were led
By one calf near three centuries dead.
They followed still his crooked way,
And lost one hundred years a day;

For thus such reverence is lent
To well-established precedent.
A moral lesson this might teach,
Were I ordained and called to preach.
For men are prone to go it blind
Along the calf-paths of the mind,
And toil away from sun to sun
To do what other men have done.

They follow in the beaten track,
And out and in, and forth and back,
And still their devious course pursue
To keep the path that others do.

But how the wise old wood-gods laugh,
Who saw the first primeval calf!
Ah! many things this tale might teach;
But I am not ordained to preach.[3]

 Also, consistent with our holding in *Jackson* and *Harris v. Board of Water and Sewer Commissioners of City of Mobile*, 294 Ala. 606, 320 So.2d 624 [this date released], we accord to our holding in this opinion quasi prospective application; i. e., relief is afforded the instant plaintiff and all others similarly situated who incur injury or damage from this date hence.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

FAULKNER and SHORES, JJ., concur.

BLOODWORTH and ALMON, JJ., concur in the result.

EMBRY, J., concurs in part and dissents in part.

HEFLIN, C. J., and MERRILL and MADDOX, JJ., dissent.

EMBRY, Justice (concurring in part, dissenting in part) :

I concur in the result to reverse in part and remand this case for further proceedings not inconsistent with the opinion of Justice Jones. I am compelled to disagree, in measure, with some of the reasons for reversing the trial court's order granting the motion to dismiss the count sounding in tort. In totality, I am at odds with approving dismissal of the count based on contract.

The decision of this court in *Jackson v. City of Florence*, 294 Ala. 592, 320 So.2d 68, is both accurate and soundly reasoned. That decision analyzed and gave proper legislative intent to Code of Ala., Tit. 37, § 502.

My brother Jones accurately states that the legislature provided in Code of Ala., Tit. 12, § 3, that "Every county is a body corporate, with power to sue or be sued in any court of record." It should be pointed out that this action is against "The Hospital Board of Morgan County, Alabama, A Public Corporation, et al." Is this, then, an action against the County of Morgan or rather one against a public corporation organized by that county pursuant to authority of the legislature found in Code of Ala., Tit. 22, Article 5, §§ 204(18)–204(30) ? In my view it is the latter and therefore amenability to suit, ex contractu (express, implied by law or implied in fact) or ex delicto is bottomed on proper interpretation of Code of Ala., Tit. 22, § 204(24). That amenability to suit is expressed clearly in

---

3. Stevenson, *The Home Book of Verse*, Henry Holt & Co., N.Y., 7 ed., 1940, at p. 1896.

the cited code section. No claim is necessary as a condition precedent to suit as required in an action against a county per Tit. 7, § 96. As a county enjoys no immunity from suit neither does this hospital board, but no claim is required in this instance.

Here I record my dissent with the opinion where it holds that the trial court did not err in granting the motion to dismiss the contract counts. The breach of duty imposed by law may be tortious or tortious breach of contract; express, implied by law or implied in fact, either of which is subject to proof and the remedy is a matter of election by the party complaining of the wrong which resulted in injury. *Tennessee Coal, Iron & Railroad Co. v. Sizemore,* 258 Ala. 344, 62 So.2d 459 (1952); *Sellers v. Noah,* 209 Ala. 103, 95 So. 167 (1923).

"Both express contracts and contracts implied in fact are based on consent. Evidently, in view of the fact that these are the contracts which are usually before the courts, it has been said that there is no contract without the consent of the parties. Clearly, however, such an observation must have been made without regard to the existence of certain legal duties which, though of a contractual nature, are not based on consent. These are sometimes spoken of as contracts implied in law, but are more properly called quasi-contracts or constructive contracts. They are contracts in the sense that they are remediable by the contractual remedy of assumpsit. In the case of such contracts, the promise is purely fictitious and is implied in order to fit the actual cause of action to the remedy. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. The intention of the parties in such case is entirely disregarded, while in cases of express contracts and contracts implied in fact the intention is of the essence of the transaction. As has been well said, in the case of actual contracts the agreement defines the duty, while in the case of quasi-contracts the duty defines the contract." 66 Am.Jur.2d, Restitution and Implied Contracts, § 2, pp. 942–943; *Broyles v. Brown Engineering Co.,* 275 Ala. 35, 151 So.2d 767 (1963); *Cowan v. Martin & Huckaby,* 246 Ala. 378, 20 So. 2d 769 (1945).

MERRILL, Justice (dissenting).

My reasons for dissenting are the same as those appearing in my dissent in *Jackson v. City of Florence,* 294 Ala. 592, 320 So.2d 68. That case did away with governmental immunity of a city in the performance of a governmental function. This case does the same insofar as counties are concerned. These decisions have changed the law that has been in effect in Alabama for over 100 years.

Ordinarily, taxpayers expect that taxes and governmental costs will originate in the Legislature, or their city and county governing bodies. But this court has stepped in, changed a long-existing policy, and abolished governmental immunity for towns, cities and counties while engaged in a governmental function. These decisions will probably extract more money from the pockets of taxpayers in Alabama, or diminish more services each receives, than any act raising new taxes which may be passed by the Legislature now in session.

The Legislature can restore that which has been taken away in these judicial decisions if it sees fit to do so. The taxpayers' present remedy is with the legislative branch of government.

I would affirm the action of the trial court because I remain of the opinion that the question of governmental immunity in the performance of a governmental function is a legislative rather than a judicial matter, especially in view of the fact that most legislation affecting counties, cities and towns passed in the past 100 years has

been enacted with the idea that that doctrine would continue to prevail.

I respectfully dissent.

MADDOX, J., concurs.

### ON REHEARING

JONES, Justice.

█ The earnest contention of appellee's able counsel that our reversal is grounded on an issue—sovereign immunity—not raised or argued in appellant's brief deserves our response.

Plaintiff's complaint contains two counts: one in tort and one in contract. Appellant assigns as error the trial Court's order granting defendant's motion for summary judgment as to both counts. Appellant's fifteen-page brief, except for the final paragraph, is devoted entirely to the validity of the contract count. In view of the posture of our case law—permitting actions ex contractu under certain circumstances to circumvent the immunity defense—such priority of consideration is understandable. The last paragraph of appellant's brief, however, reads:

"We respectfully submit to the Court that the Circuit Court of Morgan County, Alabama, was in error in granting the motion for summary judgment as to the Hospital Board of Morgan County and that this ruling should be reversed and the cause remanded. The time is at hand to clarify the air and to once and for all remove the fallacy of governmental immunity. There is no reason or logic for us to be bound by the theory that the King can do no wrong when we do not have Kings. The theory of governmental immunity has out lived usefulness two hundred years."

The Court held the contract count invalid. Appellee now says in effect that, since he won on the issue made the central thrust of appellant's argument, appellant should not be allowed to win on an issue, though properly preserved and assigned, that was so scantly contended for. We know of no such quantitative test. However scant this argument may be, it raised the issue to which the opinion addresses itself.

Opinion corrected and extended. Application for rehearing overruled.

FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.

HEFLIN, C. J., and MERRILL, BLOODWORTH and MADDOX, JJ., dissent.

BLOODWORTH, Justice (dissenting).

On original deliverance, I concurred in the result reached by the majority opinion (authored by Justice Jones). I now wish to change my vote and dissent for the following reason.

It is now clear to me that the only issue argued on this appeal by appellant is that governmental immunity was not available to the appellee in an action on *implied contract*. But, the majority have reversed this cause on another ground—holding that governmental immunity is not available as a defense in an action *ex delicto*.

Up to this day, this Court has always followed the rule that assignments of error not substantially argued, or not argued at all, in brief are deemed waived. See e. g., *Lowery v. Stinson,* 291 Ala. 415, 282 So.2d 244 (1973); *Runge v. Mercantile Credit Corp.,* 285 Ala. 183, 230 So.2d 240 (1970); *Renfroe v. Weaver,* 285 Ala. 1, 228 So.2d 764 (1969); Appeal and Error ⊚⊃1078(1), Vol. 2A, *Alabama Digest*; Supreme Court Rule 9, Revised Rules of Practice in the Supreme Court.

In this case only three relevant sentences (quoted from appellant's brief) appear in the majority opinion on rehearing to justify consideration of the issue of tort immunity, viz:

"* * * The time is at hand to clarify the air and to once and for all re-

move the fallacy of governmental immunity. There is no reason or logic for us to be bound by the theory that the King can do no wrong when we do not have Kings. The theory of governmental immunity has out lived usefulness two hundred years."

In my judgment these statements constitute nothing more than *mere opinions.* Surely, they cannot be construed to be *substantial arguments* that the court erred in granting summary judgment because governmental immunity from tort ought to be abolished. No assignment of error is referred to. No authority is cited.

Under our cases, appellant's argument is insufficient. *Melton v. Jackson,* 284 Ala. 253, 224 So.2d 611 (1969).

I therefore dissent as I would grant the rehearing and affirm the cause.