This action was for breach of a written indemnity agreement under which the shareholders of Jack's Construction Co.,[1] the Jacksons and the Flemings, agreed to hold Reliance Insurance Co. harmless from claims in consequence of Reliance becoming surety for Jack's upon performance and payment bonds. The trial court, after a hearing ore tenus, held that Reliance's branch bond manager, Klein, had released the Jacksons and the Flemings from personal indemnity. We affirm.
Reliance executed bonds for Jack's during the years 1964 through 1967, with the defendant, Fleming, and others as personal indemnitors. The bonds were written through a local agent, Your Insurance Man, of which Rex Rankin was president. In late 1966 or early 1967, Klein came to Decatur for a meeting with the indemnitors. At that meeting there was a general discussion of releasing the indemnitors. After examining Jack's latest financial statement, Klein stated that he "saw no reason" why they should continue as indemnitors. As Rankin and Klein went out the door, Rankin commented, outside the hearing of the others, "Al, you are crazy as hell."
There was no default on any bond written before this meeting, but afterward there was default on subsequently issued bonds in the amount of $18,672.
At trial, Rankin testified that Klein was the one with whom he dealt in securing authority to execute bonds; that Klein determined the conditions under which the bonds would be written, including whether personal indemnity would be required; that on occasions Klein terminated the right to continue bonds or deal with contractors; and that all of his bonding business was conducted with Klein. He also testified that Klein did not always require personal indemnity, though he knew of no instance in which personal indemnity was not required when a closed corporation, such as Jack's, was involved. Rankin further testified:
 "Q. I guess from what you said to Mr. Cline [sic] about `crazy as hell' you regarded this conservation as being a little bit abnormal?
"A. Yes, sir.
"Q. Out of the ordinary course of business?
"A. Yes, sir.
 "Q. What did you observe he was authorized to do at that point?
 "A. Insofar as I was concerned, Mr. Cline [sic] was head of the bonding department.
* * * * * *
 "THE COURT: Would I be right in the statement that when you made this comment to Mr. Cline [sic], you were, in effect, telling him you thought he was making an error in judgment?
"A. Yes, sir.
"THE COURT: Or was making one?
"A. Yes, sir.
 "THE COURT: You didn't agree with him, in effect, it was your own way of saying —
"A. Yes, sir."
David Elgin, a claims attorney and bond salvage manager for Reliance, also testified to the authority of a branch bond manager:
 "Q. All right, sir. Branch Managers are in the corporate structure reporting to whom within Reliance? *Page 294 
 "A. They would report to someone at the Home Office. The Branch Bonding Manager would be responsible to the Home Office under the bond underwriting. Mr. McDermott or Mr. Sedwick, whoever was Vice President at that time.
"Q. You are not in that particular department?
 "A. Well, I'm associated with them. You can't take one apart from the other. We are intertwined in all the problems — they are intertwined in all our problems.
 "If I have to get recovery under an indemnity organization, obviously I have a problem if it doesn't exist.
 "Q. Are Branch Managers, normally and usually, involved with the active solicitation of business?
 "A. Branch Bond Managers are in connection with the bonding underwriting. Branch Managers are involved in the total concept of the Branch Office. That would be casualty insurance and bonding, but the Branch Bond Manager is strictly to the bonding business.
 "Q. The duties involved upon men is to get business?
"A. Yes."
Reliance introduced a memorandum from the vice president of Reliance concerning the procedure and mechanics of securing indemnity in the proper form. Contained within that memorandum is the following:
 ". . . [S]ituations sometimes arise where the indemnitor insists on eliminating or qualifying some of the provisions or limiting the scope of his indemnity. We do not encourage this. You have no authority to consent to any changes. Where they are necessary, get Head Office approval."
There is no indication that such approval was obtained by Klein, nor that the defendants complied with paragraph 18 of the indemnity contract, which states:
 "That the Agreement of Indemnity is continuing and will apply to all `Such Bonds' which the Company may have executed or procured the execution of from time to time, and over an indefinite period of years; however, any Indemnitor may by written notice by registered or certified mail to the Bonding Department of the Company at its Head Office, 401 Walnut Street, Philadelphia, Pennsylvania, disavow his liability as to any bond or bonds which may be executed by the Company subsequent to fifteen days after receipt by the Company of such notice."
After the alleged release, Reliance executed three additional bonds for Jack's and obtained a personal financial statement from the indemnitors. Elgin testified that had the defendants been released, there would be no need for the statements, and that they would be unable to obtain the statements from released individuals. After default on these subsequently issued bonds, Reliance sent a series of demand letters to the Jacksons and the Flemings. In response to one of these letters, Jackson, as president of Jack's, stated: "As for the balance of the endebtedness [sic] to said jobs, we will have the money for these in November, as we will be closing out enough jobs to take care of this matter."
There are two issues presented for review in this appeal:
First, whether Klein, as branch bond manager, had authority to release the personal indemnitors, and whether he did release the indemnitors.
Second, whether Fleming and Rankin were disqualified from testifying because of the "Dead Man's Statute."
 I
Although not disputing the validity of an oral release, Reliance strongly contends that the trial court was palpably erroneous in finding that Klein had authority to make such a release, citing the limitation upon Klein's authority shown in the memorandum. Additionally, it argues that Klein's statement did not constitute a release and relies heavily upon the subsequent *Page 295 
acts of the parties to show that the statement was not interpreted as a release.
 "An agent who is authorized to solicit and receive applications for fire insurance, and, at his discretion, to countersign and issue policies of insurance intrusted to him by the company for that purpose, must be regarded quoad hoc as the general agent of the company." Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 426, 65 So. 143, 145 (1914).
Hartford Accident Indemnity Co. v. Oglesby, 293 Ala. 620,308 So.2d 695 (1975). The evidence presented in this case, especially the testimony of Rankin, showed that Klein exercised similarly wide discretion in the bonding aspects of the business. There is no reason for treating a surety company and an insurance company differently in determining the authority of agents. Cincinnati Ins. Co. v. City of Talladega,342 So.2d 331 (Ala. 1977). Sufficient evidence was presented to support the trial court's conclusion that Klein was a general bonding agent for Reliance. The only evidence tending to limit the scope of the agency was the memorandum, which limits only authority to alter or modify the terms of indemnification rather than limiting authority to require or not to require indemnity.
There is no contention that the defendants had notice of any limitations upon Klein's authority.
While Rankin testified that he considered Klein's release of the defendants out of the usual course of business, he also stated that "Insofar as I am concerned, Mr. Cline [sic] was head of the bonding department." Clearly the question of whether Klein was a general agent of the company with at least the apparent authority to release the indemnitors was for the trial court. Where the trial court makes a decree after hearing witnesses ore tenus, every presumption will be indulged in favor of the trial court, and its finding will not be disturbed unless palpably wrong. Hartford Accident Indemnity Co.,Shrivers v. Shrivers, 277 Ala. 400, 171 So.2d 109 (1965).
Likewise, the question of whether Klein did, in fact release the indemnitors was for the trial court. Jackson's reply, as president, to Reliance's demand letter is not inconsistent with a release from personal indemnity. Nor does the indemnitor's compliance with the request for a personal financial statement preclude a finding of a release because both indemnitors owed the corporation money. Since the trial court's finding that Klein's statement that he "saw no reason" for them to continue as indemnitors constituted a release was supported by the evidence, it is entitled to a presumption of correctness on appeal. Hartford Accident Indemnity Co.
We find the trial court's decree to be supported by the evidence.
 II
Reliance contends that the testimony of both Rankin and Fleming is prohibited by the "Dead Man's Statute" (Tit. 7, § 433, Code of Alabama of 1940 (Recomp. 1958)), because Klein was deceased at the time of trial. We do not agree.
Rankin, having no pecuniary interest in the result of the suit, is not prohibited from testifying. In Manegold Admx. v.Massachusetts Life Insurance Co., 131 Ala. 180, 31 So. 86
(1901), this court stated that to disqualify a witness from testifying under this statute, his interest must be pecuniary and it must be involved in the suit so as to be affected by the judgment rendered in the case. There must be a conflict of interest between the dead and the living. See Alabama Gold LifeInsurance Co. v. Sledge, 62 Ala. 566 (1878).
Fleming's testimony was admissible under the exception recognized in Homewood Dairy Products Co., Inc. v. Robinson,254 Ala. 197, 48 So.2d 28 (1950), where the court stated:
 "In the matter here material several states have interpreted their statutes, respectively, which prohibit testimony by *Page 296 
an interested witness as to a transaction with or statement by the deceased person under circumstances there stated. The concensus of opinion is that the transaction with or statement by a deceased person is not such within such statute when it was with him and one or more others associated with the deceased in the transaction, for such other one still living may give his version of the transaction, and, therefore, the reason for the exclusion does not exist."
Sheppard v. T.R. Miller Co., Inc. 332 So.2d 374 (Ala. 1976);Lowery v. Stinson, 291 Ala. 415, 282 So.2d 244 (1973). The reason for the exclusion is also inapplicable here because Rankin, accompanying Klein as a Reliance agent, testified to his version of the transaction. There was no error in allowing the testimony of Fleming and Rankin.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.
[1] Jack's Construction Co., Inc. was originally a named defendant but was subsequently stricken as a party.