The plaintiff, Linda Roberts, filed a complaint against Dallas County; the Dallas County Commission; W.D. Nichols, sheriff of Dallas County; Donald Meeks, the jailer; and convicts Johnson and Butler. The allegations of the complaint are summarized as follows:
 On May 28, 1977, between the hours of 3 P.M. and 6:45 P.M., the plaintiff suffered a grievous ordeal of bodily injury at the hands of two inmates of the Dallas County Jail. She was kidnapped from her home and small children and taken into the woods, some distance away. During the span of approximately three hours and forty-five minutes, the plaintiff was raped three times by Mathew Johnson and Billy Butler.
 The Defendants Mathew ("Sambo") Johnson and Billy Butler were hostile criminals with long prior records of assaults, batteries, attempted murders and armed robbery but were allowed to freely enter the quarters of the chief jailer, obtain weapons and allowed to freely leave the jail.
 The County of Dallas, Alabama, the Sheriff's Department of Dallas County, the Dallas County Commission, the Sheriff of Dallas County, the jailer of Dallas County . . . [defendant Donald Meeks] were negligent in the manner, way and method that they exercised their responsibility for the care, supervision, control and surveillance of the prisoners in that jail.
 The jailer defendant Donald Meeks, kept and maintained loaded firearms in and about the residence located in, near or adjacent to the Dallas County Jail, and did on a regular basis allow Mathew Johnson and Billy Butler to frequent his home to perform personal services at his residence.
 The Sheriff of Dallas County, W.D. "Cotton" Nichols, was aware of what went on around the jail with these hardened prisoners and failed to exercise any discretion or perform his duty to protect Linda Roberts from these men who were incarcerated and had a record of assaults, batteries, attempted murders and armed robbery.
 On May 2, 1977, a committee of the Dallas County Grand Jury had inspected the jail and found that it was dependent on inadequate personnel and that the jail was a "time bomb" waiting to explode due to the shortage of personnel to guard the prisoners, and this report served as a warning to the responsible defendants of the events which took place two weeks later.
 The Plaintiff now suffers fear and nausea at the sight of black men; she has terrifying nightmares; and is no longer capable of being alone without severe anxiety and fright; she continually feels unclean; and she suffers extreme humiliation, shame and embarrassment.
 The Plaintiff suffered extreme physical pain during the forceable rapes by the *Page 113 
Defendants. She was threatened with death by these Defendants and upon escaping her captors, was chased by them for forty-five minutes through the woods to a point of physical exhaustion. During that time she fell into ditches, was cut by briars and brambles, and was torn, scratched, and scraped on rocks, stones and . . . vegetation.
 Linda Roberts was hospitalized for the injuries she received and as a consequence of those injuries.
The complaint sought damages of $500,000.00.
All of the defendants, except the two convicts, filed motions to dismiss. The court granted each motion and entered a default judgment against the two convicts. The plaintiff appealed. We reverse.
Against an ARCP 12 (b)(6) motion to dismiss, a complaint must be construed in favor of the pleader and should not be dismissed unless it appears beyond all doubt that the plaintiff can prove no facts in support of the claim which would entitle him to relief under some legally cognizable theory. Conley v.Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
The appellees first argue that the complaint was properly dismissed because the plaintiff's claim is barred by governmental immunity. They concede that the defense of governmental immunity in tort actions against counties and county commissioners, when acting in their official capacities, has been disavowed in this state, but say that rule applies only to cases arising after the release of Cook v. St. ClairCounty, 384 So.2d 1 (Ala. 1980). We cannot agree with this reading of Cook. To the contrary, Cook makes it plain that county governmental immunity was abolished by this Court's decision in Lorence v. Hospital Board of Morgan County,294 Ala. 614, 320 So.2d 631 (1975). Hudson v. Coffee County,294 Ala. 713, 321 So.2d 191 (1975), removed all doubt that such was the case. That case held expressly that county immunity was abolished by Lorence because, as noted in Cook, the decision inLorence was bottomed on the construction of Tit. 12, §§ 3 and 115, and Tit. 7, § 96, Code of 1940 (Recomp. 1958), as well as Tit. 22, § 204 (24), Code of 1940. In Hudson, writing to this issue, the Court said:
 The appellant devotes the major portion of his brief to an appeal to abolish the defense of governmental immunity in tort actions as to counties. This court did just that in Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975), but limited the rule of that case [to that case] and to similar causes of action arising thereafter.
320 So.2d at 715-716. We hold that the defense of governmental immunity did not justify dismissing the plaintiff's complaint.
The appellees next argue that the complaint fails to state a claim against the county and county commission because it contains no allegation that a verified claim was filed against the county, as required by § 11-12-5, Alabama Code of 1975. First, we note that this was not one of the grounds contained in the motion to dismiss, and even if it were, we are not prepared to say that such specificity of pleading is required under the civil rules; but, even if so, the plaintiff clearly has the right to amend to cure such defects. See ARCP 9 and 15. In the posture of the case before us, the appellees are raising this issue for the first time on appeal in support of the trial court's granting their 12 (b)(6), ARCP, motion to dismiss. They did not raise it as an affirmative defense, and in no way was the defect brought to the attention of the plaintiff. Again, we note that the letter and spirit of the Rules of Civil Procedure compel us to resolve this issue in favor of the pleader as against a 12 (b)(6) motion to dismiss. The plaintiff does have the burden of showing compliance with the statute, but cannot be cut off by a motion to dismiss. The standard of review in this court differs, depending upon what order the appeal is from. A dismissal under ARCP 12 (b)(6) is viewed differently from a grant of summary judgment, and both are different from an appeal from a judgment entered after a jury verdict. *Page 114 
Nothing was considered by the court in this case except the complaint and the defendants' motions to dismiss. Thus, the motions were not treated as motions for summary judgment, with all parties given an opportunity to present all pertinent material as provided by the last provision of Rule 12. Therefore, we are left to test the action of the trial court under the standard of review applicable to 12 (b)(6) dismissals.
A motion to dismiss under ARCP 12 (b)(6) has been described as a lineal descendant of the old general demurrer and should be granted very sparingly and, when granted, leave to amend should always be afforded. 2 Lyons, Ala.Prac. § 12.7, Author's Comments. In this case, the court denied the plaintiff's motion for leave to amend. The proper test of a motion to dismiss for failure to state a claim upon which relief may be granted is whether it appears that the plaintiff can prove no set of facts in support of a claim entitling him to relief. Smith v. Potts,293 Ala. 419, 304 So.2d 578 (1974).
The plaintiff's claim in this case is said to be one of first impression in this state, although other states have recognized it. In Lavoie v. Aetna Life and Casualty Co., 374 So.2d 310
(Ala. 1979), and Trabits v. First National Bank of Mobile,295 Ala. 85, 323 So.2d 353 (1975), we cautioned that the courts should be especially reluctant to dismiss a case on the pleadings when the theory of liability is novel and untested. Such cases should be explored in light of actual facts developed on discovery or otherwise, citing Wright and Miller,Federal Practice and Procedure § 1357 (1969). This is such a case. We cannot say as a matter of law that the plaintiff cannot prove a set of facts which would establish a claim for relief against any of the defendants in this case.
As we have said so often, the issue of proximate cause is almost always a case for the jury under proper instructions. It was improper to dismiss the complaint in the case on the ground that the plaintiff could never show that the injury complained of was not the proximate result of some act on the part of one or more of the dismissed defendants.
The judgments of dismissal are reversed, and the causes are remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, EMBRY, BEATTY, and ADAMS, JJ., concur.
MADDOX, J., concurs specially.