The sole question presented is whether the trial court erroneously granted a motion to dismiss a claim against the Andalusia City School Board, its members, and the superintendent, appellees, based upon their failure to require a contractor to furnish a payment bond to protect materialmen, as required by Code 1975, § 39-1-1.[1]
In 1983, Warrior Hinkle, Inc. (Warrior Hinkle), appellant, furnished approximately $51,000 worth of material to a roofing contractor. Approximately $21,000 worth of this material was used to repair and improve Andalusia High School. This work was commenced without a payment bond as required by Code 1975, §39-1-1. Warrior Hinkle, having not been paid for the materials, brought suit in Montgomery Circuit Court against several defendants, including the school board. Warrior Hinkle's initial theory of recovery against the school board was breach of the statutorily imposed duty to require a payment bond. The school board filed a motion to dismiss, contending that venue was improper and that it was immune from tort liability because of the doctrine of governmental immunity. Before the trial court ruled on the motion to dismiss, Warrior Hinkle amended its complaint, adding as defendants the superintendent and the individual school board members. In addition, it included counts seeking recovery against the board under theories of implied and constructive contract and quantum meruit. Warrior Hinkle's theory of recovery against the superintendent and board members was for breach of a statutorily imposed duty, implied contract, and breach of duty while performing ministerial tasks or duties.
The court, after a hearing on the motion, severed Warrior Hinkle's claims against the school board, the board members, and the superintendent, and transferred that portion of the case to Covington Circuit Court. Thereafter, the Covington Circuit Court dismissed the case on the ground that the defendants were entitled to governmental immunity pursuant to Ala. Constitution of 1901, Article 1, § 14. Warrior Hinkle filed a motion to alter, amend, or vacate the judgment. This motion was denied, and it appeals here.
Warrior Hinkle contends that its cause of action should not have been dismissed because the complaint, as amended, sets out several theories of recovery which are not *Page 1287 
controlled by the governmental immunity provisions. We disagree.
In the eleven counts of Warrior Hinkle's complaint, it attempts to allege various causes of action, but each count recites that its cause of action arises out of a failure of the board, the superintendent, and the board members to require the payment bond. It claims that this duty to require a payment bond is placed upon the board, the superintendent and the board members by the Court of Civil Appeals' interpretation of the statute in the case of Housing Authority of Prattville v.Headley, 360 So.2d 1025 (Ala.Civ.App. 1978). The facts in that case are almost identical to those alleged by the plaintiff in this case.
In Headley, a roofing material supplier brought an action against the city housing authority to recover for the authority's negligence in failing to require the roofing contractor to post a bond pursuant to § 39-1-1. The Court of Civil Appeals held as follows:
 "State law requires the execution of a performance bond before a public work project is commenced. . . . The Housing Authority was under a statutory duty to require strict compliance with this law. The Authority failed in its duty by not taking appropriate action to see to it that [the roofing contractor] posted the necessary bond. Accordingly, appellee was entitled to maintain a suit against the Authority for its failure."
360 So.2d at 1027.
It is apparent, however, in reading the court's opinion in the Headley case, that the only reason Headley was able to maintain his suit was the fact that the enabling legislation by which the housing authority was created provided that housing authorities could sue and be sued, and a tort action against such bodies was permissible. In the instant case, the defendants are immune from tort action in their official capacities by reason of sovereign immunity. Enterprise CityBoard of Education v. Miller, 348 So.2d 782 (Ala. 1977);[2]Hickman v. Dothan City Board of Education, 421 So.2d 1257 (Ala. 1982). Thus, the allegations of breach of duty against the school board, its members, and the superintendent, acting in their official capacities, were properly dismissed. Their immunity also extends to implied contract claims brought against them. Deal v. Tannehill Furnace Foundry Comm'n,443 So.2d 1213 (Ala. 1983).
We must now determine whether the trial court erred in dismissing the appellant's claims against the school board and the superintendent "acting in their fiduciary [i.e., individual] capacities for the improvement or repair of public property known as Andalusia High School." Appellant citesHickman v. Dothan City Bd. of Ed., for the proposition that "alleged negligent conduct of a state employee, even when committed in the line and scope of employment is not within the ambit of § 14's protection." 421 So.2d 1257, 1259 (Ala. 1982).
This issue was addressed in Carter v. Board of Trustees ofthe University of Ala. in Birmingham, 431 So.2d 529 (Ala. 1983). The Carter Court wrote as follows: *Page 1288 
 "Because Carter sued not only a state agency but individual state employees, we must consider whether in this aspect the suit is actually against the state. `The prohibition of Section 14 [of the Constitution] cannot be circumvented by suing the official or agent individually.' Milton v. Espey, 356 So.2d 1201, 1202 (Ala. 1978). That case involved a suit by a University of Alabama employee for breach of contract and fraud against the supervisor who allegedly altered the terms of the plaintiff's employment. We allowed the fraud claim but held that the defendant's supervisor
 `was merely the conduit through which the University contracted with [the plaintiff]. Thus, a suit seeking money damages for breach of contract, although nominally against [the defendant] individually, comes within the prohibition of Section 14 as a suit against the State. [The plaintiff's] contract was in fact with the University of Alabama.'
 Id. at 1202-03. Similarly, in the present case, Carter entered into a contract of employment not with the individual defendants but with UAB. Therefore, his claim for wrongful termination of employment and breach of contract is a suit against UAB and barred by § 14." 431 So.2d at 531.
We find that the allegations against the school board and the superintendent in their individual capacities are but an attempt to circumvent § 14, in that the state is the real, substantial party in interest. Here, the contract for roofing repairs was entered into for the benefit of the state. The individual members of the school board and the superintendent were merely the conduit through which the state entered the contract. Thus, we find that appellant's allegations against the individual members of the school board and the superintendent were properly dismissed.
Plaintiff's other claims against the Board are likewise barred under the principle of governmental immunity. EnterpriseCity Board of Education v. Miller, supra.
Furthermore, as stated in plaintiff's brief, its claims against the board members and the superintendent are to the effect that they acted "tortiously, illegally, and in violation of their authority by not requiring a payment bond." (Emphasis added.) We hold that these claims are not outside the scope of our constitution's governmental immunity provisions.
Because we find that the lower court properly dismissed the claims against the Andalusia School Board, its members, and the superintendent, in both their official and individual capacities, we hold that the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] Code 1975, § 39-1-1 reads, in pertinent part, as follows:
 "(a) Any person, firm or corporation entering into a contract with the state or county or municipal corporation or subdivision thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges shall be required, before commencing such work, to execute a performance bond, with penalty equal to 100 percent of the amount of the contract price, and, in addition thereto, another bond with good and sufficient surety, payable to the state, county or municipal corporation or subdivision letting the contract, in an amount not less than 50 percent of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials or supplies for or in the prosecution of the work provided for in such contract and for the payment of reasonable attorneys' fees incurred by successful claimants or plaintiffs in civil actions on said bond."
[2] In Enterprise City Board of Education v. Miller, this Court held:
 "It is quite clear that Jackson [v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975)] and Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975), are based upon legislative interpretation. The court recognized in both of these cases, and in subsequent ones, that the legislature is the appropriate body to make policy in the field of governmental immunity; and, unless contrary to the constitution, it is our function to uphold the legislative will in areas appropriate for its action. The holding in Sims [v. Etowah County Bd. of Education, 337 So.2d 1310
(Ala. 1976)], that a county board of education was immune to suits in tort because of the absence of statutory authorization for such suits, was based upon recognition of the legislature's prerogative in this field.
 "City boards of education are authorized by the legislature. Title 53, § 148, et seq. [Code of 1940.]
". . .
 "There is no mention in the statutes under which city school boards are created of the ability to be sued. . . ."
348 So.2d 783.