299 So.2d 727

**George I. MARTIN**

v.

**Waymon L. HOWARD and Carolyn Howard.**

**SC 791.**

Supreme Court of Alabama.

Aug. 29, 1974.

J. A. Hornsby and Roy D. McCord, Gadsden, for appellant.

Bert Latham, Centre, for appellees.

HARWOOD, Justice.

This is an appeal from a decree entered in a boundary line dispute between two coterminous owners of parcels of land located in Cherokee County, Alabama.

In the bill of complaint filed by George I. Martin, in the portions material to this review, it is set forth that the boundary line between the lands belonging to Martin, and the lands belonging to the respondents "is in dispute, and that the correct location of the boundary line or the true line is unknown, and that it is necessary that said line be located and fixed by proper decree of this Court."

It was prayed:

"* * * that the Court will make and enter an order, judgment or decree, holding that the boundary lines between said lands of the complainant and said lands of Respondents is in dispute and by said decree and any other further decrees that may be necessary will fix, locate and establish the boundary line between said lands of the Complainant and said lands of the Respondents."

In their answer the respondents averred that the boundary line between the complainant and the respondents had theretofore been established by Billy Joe Baker, a registered surveyor; that said survey was made under an agreement between the complainant and L. E. Galloway, the predecessor in title of the respondents, and that the boundary line so established was accepted and approved by the complainants when such survey was made. The bill further prayed that if any further survey be made that the expense of same be borne by the complainant.

In the hearing below the complainant testified there was a fence between the two parcels, but the respondent had bulldozed it down. After this was done the complainant spoke to the respondent and he agreed on the line twice. The area on both sides of the fence was wooded land, and complainant had pastured some cows on his side before the fence was torn down.

When asked on cross-examination if respondent had made a statement that he agreed that the fence was the line, the complainant replied, "I think he did."

In reply to questions addressed to him by the court, he said the old fence was nailed to trees, and did not go straight. He had never cultivated to the fence which complainant replaced along the line of the old fence that also ran from tree to tree.

Documentary evidence in the form of deeds were introduced in evidence by the parties.

There was introduced in evidence by the complainant a rather rough drawing of the lands in question, with a boundary line shown as the complainant contended it should be. Unfortunately there was considerable finger pointing in the testimony concerning this drawing, and in several instances it is difficult, if not impossible, to follow this testimony because of its generality and the lack of identification as to the points or lines being testified about. To an observer of this finger pointing, it probably had meaning. We are not so privileged in this review.

Following an amendment to the complaint, and an answer thereto, neither of which materially changed the posture of the case, there appears a "Decree for Survey." This decree recites:

"This cause is submitted for decree upon the bill of complaint, the answer of the respondents, and testimony taken orally before the court pursuant to Equity Rule 56 and, from a consideration thereof, *it appears to the Court, and it is agreed to in open Court by and between the complainant and the respondents, that a survey of the boundary lines between the lands of the complainant and the lands of the respondents is necessary,*

*pertinent and material to the final determination of the issues in this cause for the following reasons: * * *"* (Emphasis ours.)

The court further decreed that a survey of the property be made by a licensed surveyor to be appointed by the court, and directed the Register to obtain estimates from licensed surveyors as to the approximate cost of such a survey.

The Register reported he had contacted three licensed surveyors, and of the three only Raymond Woodsmall of Centre, Alabama, would consent to make an estimate for the survey, and his written estimate was $1,250.00.

Thereafter the court entered an order appointing Mr. Woodsmall to make the survey, and provided that each party deposit with the Register $625.00 to cover the cost of the survey. As a preamble to the decretal portion of this order, the court, after noting the cost of the survey, observed:

"* * * Thereafter the court, on more than one occasion, conferred with counsel for complainant and respondents to explore the possibility of effecting a resolution of the dispute between the parties without incurring the aforesaid estimated cost of a survey but no such settlement appears to be possible between them."

Thereafter the court-appointed surveyor filed the report of the survey, consisting of a detailed written description of his survey, as well as two plats prepared by him illustrating the location of the boundary line between the parcels, as established by his survey. In a portion of his written report the surveyor stated:

"* * * There were old fences near some of my corrected line, however, no general alignment of fences could be established, as they meandered from tree to tree. Some of the fences seemed to be quite old but there was no pattern to them. * * *"

By another order the court authorized a payment of $900.00 to the surveyor for his services.

The record shows that a hearing was had upon the surveyor's report. However, no showing of the matters or arguments made at this hearing appear in the record.

Thereafter the court entered an order fixing the boundary line in accordance with the report of the surveyor. The court ordered the surveyor to fix permanent judicial markers. The costs of the proceedings were taxed equally between the complainant and the respondents.

From this decree the complainant has perfected this appeal.

The testimony of the complainant as to the location of the boundary line was the only oral evidence introduced in the hearing below. As before stated, this testimony is rather cloudy for review purposes due to the use of the drawing or plat introduced by the complainant. The trial court had the advantage of hearing and seeing the finger pointing included in this part of the testimony.

But this aside, the complainant averred in his bill that "the true line is unknown, and it is necessary that the true line be located by this court." The bill prayed that the court enter orders that may be necessary to locate and establish the boundary line.

After submission of all the evidence, the "Decree for Survey" recites that it was agreed in open court by and between all the parties that a survey of the boundary line was necessary to a final determination of the issues. A survey was ordered, and the surveyor's report filed. After this, a hearing was had on the matter of the confirmation of the surveyor's report, all parties being present at this hearing. It was after this hearing that the court entered its final decree confirming the report of the surveyor.

It would appear that up to this point all actions by the court were in accord with the matters asserted and requested in complainant's bill, and in compliance with the prayer therein.

Complainant can therefore quarrel only with the conclusions reached by the court after consideration of all the evidence.

The testimony having been taken ore tenus before the trial judge, his findings and conclusions thereon are given the same weight as the verdict of a jury, and will not be disturbed unless palpably wrong. Mangina v. Bush, 286 Ala. 90, 237 So.2d 479.

After a study of this record, it is our conclusion that there was ample evidence to support the decree rendered, and we would not be justified in disturbing the same.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and FAULKNER, JJ., concur.