Appellants appeal from an adverse judgment determining appellee to be the owner of a 40-acre tract of wild, unimproved, *Page 375 
unfenced swamp and timberland located in a remote section of Escambia County.
Two questions are presented on this appeal: I. Whether the "Dead Man's Statute" is applicable so as to exclude certain testimony; and, II. Whether the appellee has established its title by adverse possession. We answer these two questions thusly: I. "No" and II. "Yes" and affirm the trial court's judgment.
Although both appellants and appellee have record chains of title extending back for more than a hundred years, neither party has record title out of the original patentee, Bennett E. Murphy, to whom letters patent were issued for the forty by the United States government on March 15, 1837. Appellee has the original sheepskin patent in its possession. It was introduced into evidence. Appellants' record title extends back to December 10, 1868, and consistently describes the lands as a quarter section of 160 acres (which includes this forty). Appellee's record title extends back to March 25, 1873, and consistently describes the 40-acre tract in question as a separate forty. Each side has assessed their lands for taxes since 1890, with the exception that appellants' predecessors in title failed to assess their lands from 1893 to 1896. Each side owns other lands adjoining the forty in question.
The evidence was heard ore tenus. The trial judge found, inter alia: that evidence of actual possession of the forty was "indefinite," "inclusive," at best a "scrambling" possession until 1950-51; that in May, 1951, William Cook, an employee of appellee, went upon the forty with J.C. McGowin, father and predecessor in title of appellants, showed the forty and advised McGowin that it belonged to, and was claimed by, appellee and McGowin "expressed no dissatisfaction with said claim"; that in 1950 or 1951, another employee of appellee, Sam Sowell, went with McGowin and his son-in-law Nettles onto the forty when Sowell informed them it was "Company land," and neither "made any protest of said claim"; that up to the date of his death on August 22, 1968, McGowin took no action with respect to appellee's claim as to the ownership of the forty. The trial judge found the ownership of the forty to be established in appellee by adverse possession.
The evidence is undisputed: that one Brooks Lambert, employee of appellee, went on the property in 1951 to check on the forty as to whether the timber should be cut, and it was cut by appellee; that William Cook, went on the forty on an occasion in May, 1951, other than the occasion that he was accompanied by Mr. McGowin when he showed McGowin the lines of the forty; that one Sam Sowell, employee of appellee, between 1946 and 1950 went on the forty to locate the exact location of the river and found marked lines and the corners of the forty; that when Sowell went on the property with McGowin and Nettles in 1950 or 1951 he showed them the lines and corners of the forty; that four or five years later, Sowell testified concrete corners were placed on the forty and the east and west lines painted white; that Sowell had been back on the forty two or three times since inspecting it and that he knew of no claim made to the forty by McGowin or appellants; that Larry Hestor, aerial forester for appellee, found concrete markers at the corners of the forty about one year before trial and the exterior lines were painted white that he also later checked on beetle damage and cut some infested trees without interference or protest.
There is also evidence that appellee has attempted to lease certain lands, including the forty. On the other hand, appellants have executed oil, gas and mineral leases to lands, which include the forty. Moreover, appellants cut approximately 15 acres of timber on the forty not long before suit *Page 376 
was brought by appellee.[1] Appellee, on the other hand, executed a royalty lease to lands, including the subject forty, in favor of its stockholders, and leased the property for oil and gas exploration, twice since 1951. During the 1950's, appellee caused the concrete markers to be placed at the corners of the forty and the exterior lines to be painted white.
 I.
Appellants contend that the trial court erred in allowing Cook and Sowell to testify as to their conversations with the deceased McGowin because the conversations violated the "Dead Man's" statute [Tit. 7, § 433, Code].
There are two answers to this contention. First, assuming without deciding. that the testimony of Cook cannot be considered because of the "Dead Man's" statute, the testimony of Sowell as to his conversation with McGowin remains. It is not violative of the "Dead Man's" statute because it was witnessed by an "interested" witness — Nettles, McGowin's son-in-law, and husband of one of appellants — one whose interests are clearly aligned with those of his wife in this case. Lowery v. Stinson, 291 Ala. 415, 282 So.2d 244 (1973). Moreover, he was present at trial and testified concerning the transaction.
Second, although Cook was an employee of appellee at the time of the conversations, he is not now. He is now a county commissioner and it does not appear that he has any pecuniary interest in the result of this lawsuit. Hulsey v. Folsom,286 Ala. 474, 241 So.2d 889 (1970). Nor, for that matter, is an employee ipso facto incompetent under the "Dead Man's" statute, although he may be if personally interested in the outcome of the suit. 97 C.J.S. Witnesses § 184.
 II.
Appellants' other contention for reversal is that appellee's proof did not meet the requirements for establishing title by adverse possession.
Our rules of review are well established.
The testimony was taken ore tenus before the trial judge. Thus, his findings and conclusions thereon are given the same weight as a jury verdict and will not be disturbed unless plainly and palpably erroneous. Martin v. Howard, 293 Ala. 36,299 So.2d 727 (1974).
We recently held in Turnham v. Potter, 289 Ala. 685,271 So.2d 246 (1972):
 "It is not necessary to physically reside upon land to establish title by adverse possession. Moorer v. Malone, 248 Ala. 76, 26 So.2d 558 (1946). Land need only be used by an adverse possessor in a manner consistent with its nature. Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174 (1910). As was said in Matthews:
 "`(O)penness and notoriety and exclusiveness of possession are shown by such acts in respect of the land in its condition at the time as comport with ownership — such acts as would ordinarily be performed by the true owners in appropriating the land or its avails to his own use * * *.' 168 Ala. 201, 53 So. 174."
We think that appellee's acts, as shown by the testimony, were sufficient to support the trial judge's finding that appellee had met the requirements for establishing title by adverse possession.
Having concluded that there was no error in admitting the testimony of Cook and Sowell under the "Dead Man's" statute *Page 377 
and that there was evidence to support the trial court's judgment, the same is affirmed.
AFFIRMED.
HEFLIN, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] This act prompted suit. Judgment for the value of the timber cut is included in the final judgment herein.