The plaintiffs below, who are the appellees here, filed two suits. One of the suits sought to have a sale and division of the lands in the estate of Clara George and the other sought to have a 45-acre tract of land which had been deeded to Manon DeShazo, Jr., declared to be a part of the estate. These cases were combined for trial and were heard ore tenus. This appeal only concerns the trial court's ruling that the deed which conveyed the 45 acres from Clara George to Manon DeShazo, Jr., should be set aside and the 45 acres considered to be part of the Clara George Estate.
The trial court's final decree provided in pertinent part as follows:
 "The main issue in this case is the validity and effect of a deed made by one Clara George to her nephew, Manon DeShazo, Jr. on April 19, 1969. This deed is plaintiffs' or complainants' exhibit number 1. At the time this deed was made the said Clara George was some 77 or 78 years old and had been a patient in a nursing home for some six or seven years. Furthermore she was in the process of moving by necessity to a more expensive nursing home. She was also the owner of a valuable 45 acre tract of land which the said Manon DeShazo, Jr., as her agent, was about to lease to the A-B Realty Investment Company for a rather high rent. The rental income was to be so much that it would eliminate her pension paid by the Veterans Administration. It is agreed that Manon DeShazo, Jr., paid nothing for the land.
 "This deed is a puzzle and both parties to it are now dead. But it seems inconceivable that an intelligent woman in her right mind would give away such valuable property at a time when she was confronted with the problems facing her.
 "Without commenting on the Moral principles as far as the government is concerned, the Court intends no reflection on Manon DeShazo, Jr., as far as his dealings with his aunt are concerned, but the Court does find that the said deed *Page 425 
was made under a trust arrangement to avoid the loss of Mrs. George's Veterans Administration pension. The entire arrangement is such that the Court can reach no other conclusion other than that Manon DeShazo, Jr. exerted undue influence upon his aunt Clara George, although his motives toward her, though mis-guided, may have been honorable.
 "Had Mrs. George wanted to leave such valuable property to this one nephew, to the exclusion of the others, it could have been done by will. But under all of the evidence in this case the Court finds and holds that Manon DeShazo, Jr., took the property described in complainants' exhibit number 1 as trustee, and that said property is part of the Clara George estate and as such is subject to this proceeding."
After this ruling the defendants below, appellants here, moved for a judgment n.o.v. or in the alternative for a new trial. The denial of these motions is the basis upon which the appellants bring this appeal.
The appellants in this case are the widow and two children of Manon DeShazo, Jr. The appellees constitute all the heirs of Clara George, except for the two children of Manon DeShazo, Jr.
During the time relevant to this suit, Clara George was a widow with no living children or grandchildren. Her closest living relatives were the children of her brother, Manon DeShazo, and their children. It appears that Clara George had great affection for these nieces and nephews as well as for their children. As Clara George progressed in age and began to need the assistance of another in the management of her affairs she turned to her nephew, Manon DeShazo, Jr., who accepted the responsibility of seeing after her interests even though he resided in Tennessee and she in St. Clair County and Jefferson County in Alabama. Manon DeShazo, Jr., had a general power of attorney for Clara George, was listed jointly on her bank accounts, paid her bills, and in general managed her affairs.
On April 19, 1969, Clara George executed a deed which conveyed the 45 acres that is in dispute here to Manon DeShazo, Jr. On the day the deed was executed, Manon DeShazo, Jr., drove Clara George to the office of her long-time attorney and then left. Mrs. George conferred with her attorney, after which the lawyer directed his secretary to prepare a deed which was then signed by Mrs. George and witnessed. Shortly thereafter Manon DeShazo, Jr., arrived and the two left together. The deed was recorded on the same day. Apparently there was no monetary consideration paid by Manon DeShazo, Jr., for this property, which at that time was valued at $70,000.
Clara George was 78 years old when she conveyed this property and resided in a nursing home. Although she had suffered a stroke in 1963, the evidence tends to show that at the time of the conveyance she was mentally competent and completely aware of the nature of her act. Also, it appears that she was in good physical health for someone her age and that the reason she resided in a nursing home was due to convenience rather than necessity.
During this period of time, Clara George was receiving a monthly pension from the Veterans Administration in the amount of $108. In order to be entitled to this widow's pension Mrs. George could not have an annual income in excess of $2,000.
On May 1, 1969, Manon DeShazo, Jr. entered into a long-term lease agreement with A-B Realty Investment Co. whereby the 45 acres here involved were leased for use as a mobile home park. The lease agreement initially called for a monthly rental of $250 with the rental to increase during the term of the lease to a minimum of $500 a month.
Manon DeShazo, Jr., died of a heart attack in April of 1970. Article II of his last will and testament, which was prepared in July 1969, provided for a $200 monthly payment to Clara George for the rest of her life; the remainder of his estate was left to his wife and children.
Clara George died on July 1, 1971, and in her will she devised and bequeathed her estate to her five nieces and nephews or if they were deceased, to their children. The *Page 426 
will named Manon DeShazo's widow as the executrix and the son of Manon DeShazo, Jr., as alternate executor. This will was prepared in December of 1970.
During the trial of this case, the trial court was continually called upon by the defendants to rule on the competency of some of the plaintiffs to testify to certain facts under the Alabama Deadman's Statute, Title 7, § 433, Alabama Code of 1940 (Recomp. 1958).
This statute provides in pertinent part as follows:
 "[N]o person having a pecuniary interest in the result of this suit . . . shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit. . . ."
The following four questions paraphrase this statute and an affirmative reply to each of the questions means that the Deadman's Statute applies and the witness is not competent to testify: (1) Will the testimony concern a statement by or a transaction with a deceased person? (2) Will the estate of this deceased person be affected by the outcome of the suit? (3) Does the witness have a pecuniary interest in the result of the suit? (4) Is the interest of the witness opposed to the interest of the party against whom he is called to testify? See Taylor v. First Nat'l Bank of Tuskaloosa, 279 Ala. 624,189 So.2d 141 (1966).
The trial court had difficulty in dealing with objections under the Deadman's Statute, particularly in the early stages of the trial. This difficulty is traced to the fact that there were two estates interested in the result of this case. The Clara George Estate would be increased if the deed were set aside, while the Manon DeShazo, Jr. Estate would be diminished if this should occur. Further, because of the nature of the plaintiffs' theories of recovery there was a tendency for the parties when they took the stand to testify to "transactions or conversations" with either Clara George or Manon DeShazo, Jr. There is no question that the parties to this suit had a pecuniary interest in the outcome.
The trial court initially ruled that the Deadman's Statute prohibited the parties from testifying to what either Manon DeShazo, Jr., or Clara George said to them, but allowed the parties to testify as to what they said in conversation with Manon DeShazo, Jr., or Clara George. This interpretation was in contravention with this court's ruling in Buye v. AlabamaMarble Quarries, 199 Ala. 589, 75 So. 9 (1917); which the trial court later recognized and attempted to correct by excluding the testimony that had been elicited. The trial court's ruling on this exclusion was stated as follows:
 Court: "That's true. I will have to exclude from consideration any statements that have been made to Manon DeShazo [Jr.] by any of the witnesses. I believe we had some yesterday."
The next witness for the plaintiffs after this ruling was Dr. John DeShazo, who was a party plaintiff. He was a grandnephew of Clara George in that his deceased father, Ira W. DeShazo, was one of her nephews. Consequently, John DeShazo was a beneficiary under Clara George's will. He was questioned by counsel for plaintiffs as to a conversation he had with Clara George in 1968. Over the specific objection of the defendants based on the Deadman's Statute, the trial court allowed John DeShazo to testify as follows: "Aunt Clara was very disturbed about something that Uncle Manon was doing." The trial court erred in overruling the defendants' objection to this testimony which was rendered incompetent by the Deadman's Statute, as outlined above.
This particular testimony of Dr. John DeShazo was brought out on re-direct examination and the appellees contend that it was proper because during cross-examination Dr. DeShazo had been asked by appellants about a conversation he had had with Clara George in 1969. Appellees argue that this constituted a waiver by appellants to any later objection to testimony by Dr. DeShazo concerning conversations with *Page 427 
Clara George. This contention is not well taken, in that it is settled law that a waiver does not occur if during cross-examination a witness is asked about matters brought out on direct by the other side and inadmissible under the Deadman's Statute. Walling v. Couch, 292 Ala. 33, 288 So.2d 435
(1973); Milton Realty Co. v. Wilson, 214 Ala. 143, 107 So. 92
(1926); Scarbrough v. Blackman, 108 Ala. 656, 18 So. 735
(1895).
The trial court also erred by allowing testimony of several of the party plaintiffs, all beneficiaries under Clara George's will, as to an "understanding" or "agreement" reached during 1968 or 1969 within the "family" regarding the maintenance of Clara George and the ultimate disposition of her property. The trial court stated its interpretation of this understanding in the following manner:
 "Well, as I understand the testimony here of Mr. DeShazo and Mrs. Hawkins, the understanding — their understanding of the agreement reached some time in 1969 was that the property would be used for the support of Mrs. George as long as she lived. And then each one of them testified as to their understanding of it; and that after her death it would be divided among the five. That's what I understood the testimony of these two witnesses to be with reference to the agreement as to the support of Mrs. George and as to the eventual division of her property."
The error here is also based on the Deadman's Statute. The evidence was undisputed that Manon DeShazo, Jr., handled Clara George's business affairs and was the person who managed her finances and obviously was the one who was most involved in planning for her future needs. It is also undisputed that Manon DeShazo, Jr., for the most part was the only one of the DeShazo family to be involved in making the arrangements for the lease agreement for the mobile home park. Of course at the time the lease was entered into he was the title owner of the property, but prior to the passage of title from Clara George to him, Manon DeShazo, Jr., had made preliminary arrangements in securing the lease. Thus the testimony of these plaintiffs which the trial court allowed, over the appropriate objection by counsel for defendants, regarding an "understanding" on the matter of Clara George's future income and property disposition would have necessarily had to be based upon either conversations with or transactions with Manon DeShazo, Jr. As such, these witnesses were not competent to testify on this subject under the Deadman's Statute.
The trial court committed reversible error in overruling defendants' objections under the Deadman's Statute to the testimony of these witnesses and Dr. John DeShazo. Accordingly, this case is due to be reversed and remanded to the trial court for a new trial.
REVERSED AND REMANDED.
BLOODWORTH, JONES, ALMON and EMBRY, JJ., concur; SIMMONS, Retired Circuit Judge, sitting by order of the Chief Justice.