This is an action by a real estate broker for compensation brought upon breach of (1) an oral contract, (2) an implied contract, (3) a quasi-contract and (4) for work and labor. There was a general jury verdict for plaintiff and judgment in the amount of $9,534.34. Defendants appeal. We reverse.
Hudson and Boriss, joint owners of certain vacant real estate in Vestavia Hills, signed a sales contract agreeing to sell that real estate for $75,000. The purchaser was not named in the contract but plaintiff was designated agent to negotiate the sale for a commission of 6%. The date of the contract was June 21, 1972. It was the testimony of defendant Boriss that plaintiff was orally authorized to submit the offer of sale to only one prospective purchaser, a Mr. DeArmond. Plaintiff denies such limitation.
Plaintiff carried the offer of sale to DeArmond who refused it and made a counter offer of $35,000. Defendants refused. Plaintiff then carried the offer to officers of the City National Bank and the Central Bank. Each refused the offer. The plaintiff then offered the sale to The First National Bank of Birmingham on July 13, 1972. Mr. Powell of that bank viewed the property with plaintiff, drew up a counter offer for $70,000 and went with plaintiff to submit the offer to Hudson. Powell stated *Page 1373 
that Hudson rejected the offer, telling him that plaintiff was not authorized to make the offer of sale to The First National Bank. Plaintiff testified that Hudson said nothing to Powell at that meeting as to his lack of authority.
On July 15, 1972, Hudson and Boriss went with plaintiff, at his request, to a meeting with officers of The First National Bank. Hudson there stated that plaintiff had been authorized to offer the property only to DeArmond and that it was no longer for sale. Plaintiff did not dispute such lack of authority.
There is no testimony of any further contact between plaintiff and Hudson and Boriss concerning the property, until plaintiff learned that a lease of the property had been given to The First National Bank on April 4, 1973. Plaintiff had no part in the negotiation of the lease.
Plaintiff demanded a commission from the lease of Boriss. Boriss refused saying that the property was leased, not sold, and that plaintiff had only been authorized to offer the property for sale to DeArmond. Hudson died in July, 1973. Plaintiff filed a claim for a commission based upon the written contract to sell. The claim was denied. Plaintiff brought suit claiming $13,846.13 for breach of an oral contract, an implied contract, a quasi-contract and for work and labor. The jury returned a verdict for $9,534.34. Motions for new trial and judgment n.o.v. were denied.
The defendants have filed separate appeals presenting some different issues; however, most of the issues presented are common.
Defendants, The First National Bank of Birmingham and Elizabeth S. Hudson as Co-Trustees of the Estate of Dan R. Hudson first present the issue of whether an action may be properly maintained against them on a debt claimed against the estate. It is the contention of these defendants that the proper parties to such action are the executors of the estate and not the trustees. Such contention is correct. Title 61, Art. 5, Code of Alabama (1940) (Recomp. 1958). That contention is not contradicted. However, it is to be answered by the fact that the record discloses that a motion for leave to amend under Rule 15 with attached amendment adding The First National Bank of Birmingham and Elizabeth S. Hudson as Co-Executors of the Estate of Dan R. Hudson as parties defendant was certified served upon counsel for defendants on May 29, 1975. The motion was granted on June 11, 1975. Defendants declare they did not receive the motion and amendment and that no summons and complaint was filed and served upon them.
Though the amendment here was designated as an addition of parties defendant, it was in fact and effect a mere change in the capacity of the defendants. The First National Bank and Mrs. Hudson were, in fact, both co-executors and co-trustees. The offices of co-executor and co-trustee were united in the same person. There was such an identity of interest between the bank and Mrs. Hudson as co-trustees and as co-executors that a suit against them in one capacity was notice to them in the other capacity. To require the mere formality of service of another summons and complaint upon their being added as defendants in their capacities as co-executors would be useless and of no point. Hirsh v. Bruchhausen, 284 F.2d 783 (2d Cir. 1960). In this case, their defense was not affected and no prejudice occurred. Of course, the amendment related back under Rule 15 (c) ARCP. Board of Water and Sewer Commissioners of theCity of Mobile v. McDonald, 56 Ala. App. 426, 322 So.2d 717
(1975).
Defendants insist that plaintiff was not entitled to prosecute the action because the statute of non-claims had not been complied with. (Tit. 61, §§ 210-214, Code of Alabama (1940) (Recomp. 1958)). They contend that the claim filed was upon a written contract and the suit was upon breach of an oral or implied contract and for work and labor.
The purpose of the statute of non-claims is to give notice to the personal representative of the nature, character and amount of the claim and to distinguish it *Page 1374 
from other claims so that it may be investigated and the question of liability determined. Merchants Nat'l Bank ofMobile v. Cotnam, 250 Ala. 316, 34 So.2d 122 (1948); Roberts v.Grayson, 233 Ala. 658, 173 So. 38 (1937). Failure to lay his claim in the terms of the form of action subsequently used to enforce it does not bar the suit. Watson v. Hamilton, 210 Ala. 577,98 So. 784 (1923); Metcalf v. Payne, 214 Ala. 81,106 So. 496 (1925).
Defendants submit that testimony was admitted over objection contrary to Tit. 7, § 433, Code of Alabama (1940) (Recomp. 1958) (Deadman's Statute). We agree.
Section 433 provides:
 "[N]o person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, or when such deceased person, at the time of such transaction or statement, acted with any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed. . . ."
There can be no question but that much testimony of plaintiff falls within the statute as applied and interpreted by the courts. DeShazo v. Miller, 346 So.2d 423 (Ala. 1977). Plaintiff contends that defendant waived the statute. Plaintiff says defendants waived the incompetency of plaintiff to testify as to the transactions between himself and the deceased Hudson, when they failed to object to the testimony of Boriss and officers of The First National Bank who were called as witnesses by plaintiff to testify to statements between Hudson and plaintiff. This contention is not supported by the facts or the law.
The testimony of the officers of The First National Bank as to statements of the deceased to plaintiff was not incompetent under the statute. They were disinterested witnesses, having no pecuniary interest in the result of the suit. If they had any interest, such interest was opposed to the interest of the plaintiff who called them to testify. Taylor v. First Nat'lBank of Tuskaloosa, 279 Ala. 624, 189 So.2d 141 (1966); DeShazov. Miller, supra.
The testimony of Boriss as to transactions between Hudson, himself and plaintiff were admissible as was the testimony of plaintiff as to his transactions or conversations with Hudson when Boriss was present. If one associated with the deceased was present when a transaction occurred and is alive and able to give his version of the facts, the statute does not apply.Homewood Dairy Prods. Co. v. Robinson, 254 Ala. 197,48 So.2d 28 (1950); Lowery v. Stinson, 291 Ala. 415, 282 So.2d 244
(1973); Sheppard v. T.R. Miller Mill Co., 332 So.2d 374 (Ala. 1976).
The trial court overruled objections to testimony of plaintiff as to conversations or transactions between him and deceased Hudson, saying that defendants had "waived the Deadman's Statute because you have not made the proper objections at the proper time. . . ." Exactly what the court meant by its statement is not clear. Plaintiff supports the court's statement on two grounds. First, that the ground stated for the objection was not sufficient. That premise is not supported by the record nor by the statement itself. The ground of the statute was clearly stated many times during plaintiff's testimony and the objection was overruled. Though a party may not object to illegal evidence at one point, such failure does not waive the right to object to other illegal evidence at another point. Radue v. McCullough, 47 Ala. App. 154,251 So.2d 773 (1971). The record is clear that the ground for defendant's objection was very evident though it was not specifically stated in each incident. Second; plaintiff and the court seem to have considered that because defendants had not objected to the testimony of Boriss and the bank officers concerning transactions between Hudson and plaintiff, they had waived all right to claim the benefit of *Page 1375 
the Deadman's Statute. We have previously shown that to be a false premise. The testimony of Boriss and the bank officers was not incompetent under the statute. Failure of defendants to object to legal testimony could not constitute a waiver of the right to proper objection at another time. We find no waiver by defendants of the benefit of the statute and the court erred to reversal by failing to sustain timely objection to the testimony of plaintiff as to his transactions and conversations with Hudson when Boriss was not present.
Defendants contend they were entitled to a directed verdict or judgment notwithstanding the verdict. We agree.
The verdict for plaintiff was general. If the evidence supports any of the theories for recovery stated in the complaint it will be permitted to stand. Clikas v. Steele,287 Ala. 270, 251 So.2d 575 (1971). There were three claims stated in the complaint — oral contract, implied contract and work and labor. There can be no question that proof of an oral contract failed. Plaintiff admits there was no oral contract of any sort.
The relationship between plaintiff and Boriss and Hudson began when plaintiff secured the signatures of Boriss and Hudson to a contract of sale of the land at a price of $75,000. That contract contained a provision that plaintiff was the agent for the sale and would be paid a commission of 6% in the event of sale. Considering the evidence most favorably to plaintiff that contract remained in effect until July 15, 1972. It was revoked by Hudson who announced to plaintiff and The First National Bank that the property was not for sale and that plaintiff had no authority to offer it for sale. There could not have existed an implied contract between plaintiff and defendants as to the sale of the property while the written contract remained in force. Humphrey v. Boschung, 47 Ala. App. 310, 253 So.2d 760 (1970); Summers v. Ralston Purina Co.,260 Ala. 166, 69 So.2d 858 (1954). Therefore, an implied contract could only have arisen from the acts and relationship of the parties subsequent to July 15, 1972.
There is no evidence, not a scintilla, that plaintiff and Hudson and Boriss had any contact after the revocation of plaintiff's agency (if it then existed) on July 15, 1972, until a commission was demanded of Boriss after the lease was already executed. Plaintiff admits that he knew nothing of the lease nor of the negotiation leading to its execution. There was a nine-month interval between the meeting of the parties at The First National Bank and the execution of the lease.
It is the rule that the agency of a real estate broker to sell is revocable at the will of the principal. Gulf TradingCo. v. Radcliff, 216 Ala. 645, 114 So. 308 (1927). However, revocation may not end the obligations of the principal to pay a commission if a sale is thereafter made. There are involved the good faith of the principal in the revocation and whether the work of the agent prior to revocation of his authority was the efficient cause of the sale. Dancy v. Baker, 206 Ala. 236,89 So. 590 (1921). The undisputed fact in this case is that plaintiff presented to The First National Bank an offer to sell for a price of $75,000. The bank, after investigation and consideration, went with plaintiff to Hudson with a counter offer to purchase for $70,000. It is without conflict that Hudson refused the bank's offer, saying that plaintiff had no authority to offer the sale to the bank.[1] At a meeting two days later, Hudson again declared plaintiff without authority to have offered the sale to the bank. Nearly nine months later Hudson and Boriss executed a lease with the bank for the property. The lease is entirely different from the authorized offer of sale. There is involved more than a slight variation in terms. Plaintiff at no time attempted negotiation of a lease with the bank or anyone. There is no evidence of fraud or bad faith in the refusal of a sale to the bank. There is no evidence *Page 1376 
that Hudson continued uninterruptedly negotiations begun by plaintiff which culminated in a contract not markedly different from that plaintiff was authorized to make. Dancy v. Baker,supra.
The burden was upon plaintiff to establish that Boriss and Hudson had revoked his authority in the midst of his negotiations and completed what he had begun with his customer upon the same or less advantageous terms for the purpose of avoiding payment of his commission. Handley v. Shaffer,177 Ala. 636, 59 So. 286 (1912). Plaintiff produced no credible evidence to support such burden. The mere fact that an entirely different contract than that offered by the plaintiff was executed between Hudson and Boriss and the bank nine months later is insufficient. Dancy v. Baker, supra.
It is the opinion of the court that the legal evidence presented was insufficient to support a verdict upon any of the theories presented by plaintiff and the motion for directed verdict should have been granted. Dillon v. Nix, 55 Ala. App. 611, 318 So.2d 308 (1975).
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.
[1] It is without conflict because we have heretofore said that plaintiff was incompetent to testify concerning the event under the Dead Man's Statute.