The trial court entered a default judgment against CTF Management Corporation ("CTF") in favor of William G. Pletch. After the trial court had denied its motion to set that judgment aside, CTF appealed; the Court of Civil Appeals affirmed without an opinion. CTF Hotel Management Corp. v. Pletch, (No. 2960873) ___ So.2d ___ (Ala.Civ.App. 1997) (table). In its unpublished memorandum that court cited as authority Hughesv. Cox, 601 So.2d 465 (Ala. 1992). We granted CTF's petition for certiorari review. We affirm.
The pertinent facts are as follows: On August 23, 1991, Pletch filed a three-count complaint in the Mobile County Circuit Court against "Stouffer Riverview Plaza Hotel," seeking damages based on allegations of false arrest, false imprisonment, malicious prosecution, and abuse of process. The complaint arose out of an incident that had occurred on July 19, 1989, when the hotel's manager had Pletch arrested for allegedly refusing to pay his bill. Pletch's complaint was served on Dorothy E. Allain, who worked under the supervision of the Stouffer Hotel Management Corporation ("Stouffer Hotel Management"), CTF's predecessor; Stouffer Hotel Management had contracted to manage the hotel for the hotel's owner, Riverview Plaza Associates, Inc. ("Riverview Plaza"), now known as AP Properties, Ltd.[1] The hotel's manager was an employee of Stouffer Hotel Management.[2] For reasons that are not fully apparent from the record, neither Stouffer Hotel Management nor Riverview Plaza answered *Page 207 
the complaint. The trial court, on November 1, 1991, entered a $100,000 default judgment against "Stouffer Riverview Plaza Hotel," which, as Pletch later discovered, was not a legal entity. "Stouffer Riverview Plaza Hotel" was, instead, a trade name under which Riverview Plaza owned the hotel and Stouffer Hotel Management operated it. Riverview Plaza had contracted with Stouffer Hotel Management for permission to use "Stouffer" as part of the hotel's name.
On September 14, 1995, almost four years after the default judgment had been entered, Pletch moved to have the judgment amended to reflect the proper defendant. That motion read in pertinent part as follows:
 "Comes now the plaintiff and moves the Court to declare that a judgment against `Stouffer Riverview Plaza Hotel,' a trade name, is a judgment against the entity that was doing business under that name. This motion is presented to the Court alternatively in the form of declaratory relief, motion to amend, motion to correct, motion for clarification and/or motion for direction.
 "1. On November 1, 1991, plaintiff obtained a judgment against `Stouffer Riverview Plaza Hotel' and recorded the same on April 16, 1992. Said judgment was a result of a no-billed criminal case instituted by the defendant against the plaintiff.
 "2. Upon information and belief, `Stouffer Riverview Plaza Hotel' was a trade or assumed name used by Stouffer Hotel Management Corporation, now known as CTF Hotel Management Corporation (hereinafter collectively referred to as Stouffer). Alternatively, said trade name was used during the subject period by AP Properties, Ltd., which entity owned the building and land occupied by the hotel.
 "3. Plaintiff contends that since Stouffer and/or AP Properties, Ltd., did business under a trade name, since the complaint gave fair notice to Stouffer and/or A.P. Properties, Ltd., it was intended to be sued, and since Stouffer and/or A.P. Properties, Ltd., was properly served at its regular place of business, a judgment against a trade name is, as a matter of law, judgment against the entity that operates the business under that trade name."
In response to this motion, the trial court amended the judgment by substituting CTF for "Stouffer Riverview Plaza Hotel" and adding $69,343 in interest. The total judgment entered against CTF was $159,343.
The dispositive issue is whether, as CTF contends, the judgment entered against it is void for lack of personal jurisdiction. CTF argues that the complaint named as the only defendant "Stouffer Riverview Plaza Hotel," which, it argues, was the trade name under which the hotel's owner was doing business. Relying on Hughes v. Cox, supra, CTF argues that the complaint was not sufficient to give its predecessor notice that it was an intended defendant. Pletch, also relying onHughes, contends that Stouffer Hotel Management was also doing business as "Stouffer Riverview Plaza Hotel" at the time he filed his complaint. He argues that Stouffer Hotel Management was the party he actually intended to sue and that CTF, as its successor, should be liable under the judgment. After reviewing the record and the briefs and after reexaminingHughes, we conclude that the trial court did not err in amending the default judgment to substitute CTF for "Stouffer Riverview Plaza Hotel."
For a judgment to be void, the court rendering the judgment must have lacked jurisdiction of the subject matter or of the parties, or have acted in a manner that was inconsistent with due process. Smith v. Clark, 468 So.2d 138
(Ala. 1985). A motion challenging a judgment as void is not addressed to the discretion of the trial court. If the judgment is void, it must be set aside. Seventh Wonder v. SouthboundRecords, Inc., 364 So.2d 1173 (Ala. 1978).
In Hughes, this Court upheld a default judgment against "Gearlene Hughes, d/b/a Hughes Realty or Hughes Realty of Clanton, Alabama," even though the complaint had named as a defendant only "Hughes Realty of Clanton, Alabama." Hughes argued on appeal that the judgment was void because the complaint did not name her as a defendant. Noting that the complaint had been personally served on Gearlene Hughes, this Court stated: *Page 208 
 "Having considered the question fully, we affirmatively hold that a judgment entered against a trade name is a judgment against the individual doing business under that trade name, at least so long as the individual was personally served with the complaint. Absent a statute to the contrary, an individual has the right to be known by any name that he chooses, and a judgment entered for or against that individual in either an assumed name or a trade name is valid. See 49 C.J.S. Judgments § 75, p. 197 (1947)."
601 So.2d at 471. In holding as it did, this Court further noted that the Rules of Civil Procedure were designed to give fair notice of the claim against the defendant and that such notice is apparent on the record when the individual served with the complaint and the person doing business by the trade name under which the defendant was identified in the complaint are one and the same. This Court made it clear that when an individual or entity is sued under an assumed name or a trade name the due process protections afforded that individual or entity require, for a valid judgment to be entered against that individual or entity, that there be no question as to the identity of the proper defendant:
 "Under the rule of the [Ex parte Nicrosi, 103 Ala. 104, 15 So. 507 (1894),] line of cases, the change from Hughes Realty of Clanton to Gearlene Hughes, d/b/a Hughes Realty did not work a change of the party defendant. As in Nicrosi, the Coxes had merely misdescribed the party with regard to its status. The fact that they did not refer to it as a corporation or a partnership in the original complaint does not distinguish this case from Nicrosi. There was no question as to the identity of the defendant, because Hughes Realty was merely the name under which Hughes did business, and as the sole proprietor she `own[ed] all the assets of the business . . . [and was] solely liable for all the debts of the business.' Black's Law Dictionary 1392 (6th ed. 1990). The change in the present case was also only `a matter of description . . . which [did] not affect the identity of the party sought to be described, but only [gave] accuracy and certainty to it.' Nicrosi, 103 Ala. at 108, 15 So. at 508.
 "The purpose of service is to notify the defendant of the action that is being brought against him. Goodall v. Ponderosa Estates, Inc., 337 So.2d 726 (Ala. 1976). Hughes personally accepted the original service and the first amendment to the complaint adding counts five, six, seven, and eight. Because she was the owner of Hughes Realty and because the complaint set forth the nature of the relief demanded, the circumstances were such as to give Hughes notice that she was the individual intended to be sued. It was incumbent upon her to appear and answer that she had been incorrectly named in the complaint, if she believed that was the case. Under the reasoning of the Nicrosi line of cases, the failure to serve Hughes with the amended complaint did not deprive the court of jurisdiction over her. The amendment did not change the nature of the suit, nor did it add any new parties to the action."
601 So.2d at 470. See, also, Mitchell Brothers Contractors,Inc. v. Benson, 450 So.2d 138, 140 (Ala.Civ.App. 1984), wherein the Court of Civil Appeals stated:
 "`There was such an identity of interest between [Mitchell Bros. Contractors, Inc., and Mitchell Real Estate] that a suit against [it] in one capacity was notice to [it] in the other capacity.' First National Bank of Birmingham v. Chichester, 352 So.2d 1371, 1373 (Ala.Civ.App.), cert. denied, 352 So.2d 1376 (Ala. 1977); appeal after remand, 360 So.2d 284 (Ala. 1978). In fact, . . . Mitchell Brothers Contractors admitted by . . . affidavit that Mitchell Real Estate Company and Mitchell Brothers Contractors, Inc., are one and the same."
The record in the present case indicates that although Riverview Plaza owned the hotel at the time Pletch filed his complaint, Stouffer Hotel Management operated the hotel pursuant to a management agreement that it had with Riverview Plaza. The management agreement conferred extensive authority on Stouffer Hotel Management to oversee, for a fee, virtually every facet of the hotel's day-to-day operations — "to direct, supervise, manage, and operate the hotel . . . and [to] determine the programs and policies to be followed in connection therewith." *Page 209 
Subject to Riverview Plaza's reserved right to approve major deviations from the policies and standards followed at other hotels managed by Stouffer Hotel Management, Stouffer Hotel Management had the authority to "implement its own standard administrative, accounting, budgeting, marketing, personnel, and operational policies and practices relating to or affecting hotel operations," provided that these policies and practices did not violate another provision in the agreement. Also, as noted, the agreement authorized Riverview Plaza to use the "Stouffer" trade name as part of the hotel's name. The agreement also provided in part as follows:
 "Signs. Subject to the prior written approval of owner in each case, and in compliance with all legal ordinances and regulations, operator shall have the right to install, remove and maintain on the exterior of the hotel building and elsewhere such signs designating operator and operator's business in the hotel as it may desire and as may be approved by owner in its absolute discretion. The cost and maintenance of such signs shall be an operating expense of the hotel. Owner hereby approves the use of a sign conforming to that set forth in exhibit C attached hereto."
Exhibit C to the agreement specified that signs bearing the name "Stouffer Hotels" would be placed in various locations on the interior and exterior walls of the hotel.
Based on the particular facts before us, we conclude that both Riverview Plaza, which was in the business of owning hotels, and Stouffer Hotel Management, which was in the business of managing hotels, did business under the trade name "Stouffer Riverview Plaza Hotel." We agree with CTF that Hughes did not specifically deal with a situation such as this one. However, even though Hughes dealt with perhaps a more common situation involving an action filed against a defendant named by the trade name of a sole proprietorship, certainly nothing inHughes precludes us from holding that when two corporate entities mutually agree to conduct their respective businesses under one trade name, a default judgment entered against a defendant named by that trade name is a judgment against either entity, provided that the entity sought to be bound was properly served with the complaint.
Contrary to CTF's assertions, we cannot agree that Riverview Plaza was the only entity closely enough identified with "Stouffer Riverview Plaza Hotel" to be bound by the judgment. In this respect, we point out that the rationale for upholding the judgment in Hughes is equally applicable here. There was no question in Hughes as to the identity of the person intended to be sued; there was no way Gearlene Hughes could not have understood that she was the defendant named in the complaint. In the present case, Pletch alleged in his complaint that "Stouffer Riverview Plaza Hotel" had on July 19, 1989, unlawfully arrested and imprisoned him and that that alleged wrongdoing had caused him damage. When they received the complaint, it should have been apparent to the on-site representatives of Stouffer Hotel Management that Pletch had stated claims for damages against the entity or entities doing business under the trade name "Stouffer Riverview Plaza Hotel," based on the alleged wrongful acts of the hotel's manager. The hotel's manager was an employee of Stouffer Hotel Management. This Court in Hughes stated that "one doing business in a trade name has fair notice that a complaint alleging a cause of action arising out of his business may lead to personal liability." 601 So.2d at 471. The record indicates that answers had been filed in numerous other actions (tort actions, workers' compensation actions, and garnishment actions) against "Stouffer Riverview Plaza Hotel" and that those actions were resolved by Stouffer Hotel Management. We find unpersuasive CTF's argument that its predecessor could not reasonably have known that it had been sued.
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, COOK, and LYONS, JJ., concur.
SEE, J., concurs in the result.
[1] We note that there is no issue as to CTF's liability for the torts of its predecessor. We also note that the particular facts of this case dictate that throughout the opinion we refer separately to CTF and Stouffer Hotel Management.
[2] The management agreement set out in the record indicates that salaried workers at the hotel were employees of Stouffer Hotel Management, and that workers paid by the hour were employees of Riverview Plaza. The hotel's manager was a salaried employee; the record does not disclose how Allain was paid. We note that Pletch attached to his brief as an appendix a copy of a March 30, 1987, amendment to the management agreement. That document, which does not appear in the record and, therefore, is not properly before us, indicates that "salaried and hourly wage rate employees and personnel necessary for the operation of the hotel" were employees of Stouffer Hotel Management. *Page 210